FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER, NJ 08754
OFFICE: (732) 240-9095
FAX: (732) 240-9072
EMAIL: fuggistaff@fuggilaw.com
ATTORNEYS FOR PLAINTIFF

| | |
|---|---|
| Robert R. Fuggi, Jr., <br><br> Plaintiff, <br><br> v. <br><br> Linda C. West, North American Risk Services, Inc., AmGUARD Insurance Company, John Doe 1-10 (fictitious individuals), ABC Corporation 1-10 (fictitious entities), <br><br> Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY <br><br> Civil Action No.: <br><br> COMPLAINT; DEMAND FOR JURY TRIAL; DEMAND FOR DAMAGES; DESIGNATION OF TRIAL COUNSEL |

## PARTIES

1. Plaintiff Robert R. Fuggi, Jr., (hereinafter "Plaintiff") is an individual citizen of New Jersey who resides at 199 Lake Avenue, Island Heights, New Jersey 08732-7791.

2. Defendant AmGUARD Insurance Company (hereinafter "Defendant AmGUARD") is an insurance company located at 39 Public Square, Wilkes-Barre, Pennsylvania, 18703.

3. Defendant North American Risk Services, Inc., (hereinafter "Defendant NARS") is a third-party claims administrator which

is located at 240 East Central Parkway, Altamonte Springs, Florida 32701-7848.

4. Defendant Linda C. West (hereafter "Defendant West") is a Senior Claims Adjuster for Defendant NARS who worked on the claim and is chiefly responsible for the failure to compensate Plaintiff under his policy.

## JURISDICTION AND VENUE

5. This Court has jurisdiction of Plaintiff's New Jersey state law claims pursuant to 28 U.S.C. §1332, as this case involves complete diversity jurisdiction between all plaintiffs and defendants. The demand for relief, excluding fees and costs, is in excess of $75,000.

6. This action stems from violations of the New Jersey Consumer Fraud Act and related common law claims.

7. Plaintiff resides in and is a citizen of the State of New Jersey.

8. No defendant is domiciled in or is a citizen of the State of New Jersey.

9. Venue is proper in, and Defendants are subject to the personal jurisdiction of this Court because a substantial part of the events giving rise to the claim occurred in this District. 28 U.S.C. §1391(b)(2).

## FACTS COMMON TO ALL COUNTS

10. Plaintiff was the primary driver of a Black 2018 F-150 Raptor Supercrew HWD, owned by Fuggi Law Firm, P.C.

11. The vehicle identification number for the truck was 1FTFW1RG2JFB89120. The plate number was S51KFV.

12. Plaintiff's truck was originally worth $84,760.

13. The truck was heavily modified with extensive upgrades designed to enhance its off-roading capabilities.

14. In addition, the truck was outfitted with numerous fixtures to aid in cycling, a long time passion of Plaintiff.

15. Plaintiff is an avid cycler who rides in excess of 5,000 miles a year in various locations.

16. The truck contained significant amounts of personal property, mostly related to sporting and cycling, valued in excess of $40,000.

17. Around 3:00 am on June 25, 2021, the truck was stolen from Plaintiff's driveway at 199 Lake Avenue, Island Heights, New Jersey.

18. Plaintiff was current on all payments for the truck and had no active repossessions against him.

19.  Plaintiff has video recording of the pickup truck being
     started and removed from his driveway.

20.  On June 25, 2021, a police report for the theft was filed
     by Officer Rocco Mellott of the Island Heights Police
     Department. Incident number 21IH01932. (The police report is
     attached hereto as **Exhibit A.**)

21.  The police report confirms the truck traveling, after being
     stolen, through an E-Z pass stop in New Jersey on June 25,
     2021.  It is Plaintiff's understanding that the police possess
     toll plaza photographs documenting same.

22.  Neither the truck nor those who stole it were ever located
     by police authorities.

23.  Plaintiff filed a claim for the loss of the truck itself
     through his auto insurance.

24.  Defendant AmGUARD insured Plaintiff for his stolen personal
     property under a policy of homeowners insurance issued to him.
     (Said policy is attached hereto as **Exhibit B**).[1]  Exhibit B at
     026.

25.  The policy of insurance issued to Plaintiff by Defendant
     AmGUARD was advertised and offered for sale in the State of New

---

[1]Branding has been applied at the bottom of each page for
reference purposes.

Jersey accompanied by a promise the policy would cover losses caused by theft.  Exhibit B at 007.

26.  Plaintiff relied on Defendant AmGUARD's promise to cover losses caused by theft in deciding to purchase said policy.

27.  Plaintiff's policy with Defendant AmGUARD covered his personal property. **His policy limit was $560,000 for personal property.**  Exhibit B at 015.

28.  Plaintiff's policy contained special limits of liability for certain classes of personal property, however, athletic equipment, eyewear and clothing without fur trim are not subject to these limits.  Exhibit B at 016.

29.  James Osborn, of Osborn Insurance Agency, is Plaintiff's insurance agent for the policy issued by Defendant AmGUARD.

30.  On or about June 25, 2021, Plaintiff reported the theft to Mr. Osborn who in turn forwarded Plaintiff's personal property claim to Defendant AmGUARD.

31.  Defendant AmGUARD sent Plaintiff's claim to Defendant NARS for claim processing and investigation.

32.  **Although all Defendants knew that Plaintiff's personal property was insured for in excess of half a million dollars,** based on information and belief, **Defendants singled out Plaintiff's claim for intentional delay and bad faith denial**

**based on their unfounded hunch that his claim for some forty thousand dollars was excessive.**

33.  From the start, communications with Defendant NARS through their agent Defendant West was marked by incompetence, delay and deception.

34.  Defendant West later advised Defendant AmGUARD that Plaintiff's claim was set up at Defendant NARS on June 28, 2021.  Defendant West or another agent of Defendant NARS thereafter contacted Plaintiff on July 1, 2021.  (Email chain between Defendant West and an agent of Defendant AmGUARD is attached hereto as **Exhibit C**).[2]

35.  Defendant West also advised Plaintiff to submit a sworn inventory of his stolen personal property along with receipts and other documentation.

36.  Defendant West advised Defendant AmGUARD that she provided this form to Plaintiff on July 1, 2021, however Plaintiff never received Defendant West's email.

37.  Defendant West advised Defendant AmGUARD that she provided the inventory form on July 12, 2021, to Mr. Osborn in response his request.  Defendant West claims she again provided Mr.

[2] Please note that all emails attached hereto were either printed directly by Mr. Osborn or forwarded to Plaintiff and/or Plaintiff's counsel before being printed.

Osborn with the inventory form on July 22, 2021, after he
reached out to advise that he had not yet received same.

38.  On July 27, 2021, in an email to Mr. Osborn, Defendant West
claimed she had emailed the inventory form to Plaintiff twice
and to Mr. Osborn three times.  Notably, **at no point did
Defendant West forward one of the five emails she claims to
have sent.**  (Email chain between Mr. Osborn and Defendant West
is attached hereto as **Exhibit D**).

39.  In response, Mr. Osborn asked Defendant West to forward the
prior emails in which she claimed to have provided the
inventory form.  Defendant West deflected and declined to
provide proof.

40.  Plaintiff, through Mr. Osborn, first received the inventory
form from Defendant NARS on or about July 22, 2021.

41.  By August 2, 2021, Defendant West confirmed receipt of
Plaintiff's amended and executed inventory form along with all
supporting documents.  (Email chain between Defendant West and
Mr. Osborn is attached hereto as **Exhibit E**).

42.  On August 11, 2021, Defendant West wrote to Mr. Osborn
advising, **"The worksheet on the contents list has been
completed and I will be completing a report for approval to**

issue the payment for $40,508.88.  Will advise once I have the
approval to issue payment."

43.   Based on information and belief, **Defendant West never
intended to complete approval paperwork and fraudulently
advised that she was approving Plaintiff's claim to delay
Plaintiff's compensation and/or to cover up Defendant West's
malfeasance.**

44.   On August 16, 2021, Defendant West contacted Plaintiff
requesting the police report number and a copy of the police
report.  Defendant West also instructed Plaintiff to provide a
copy of the completed inventory form to the police for
inclusion in their report.  (Email chain between Defendant
West, Plaintiff and Mr. Osborn is attached hereto as **Exhibit
F**).

45.   Defendant AmGUARD owed a fiduciary duty to Plaintiff as his
insurer.

46.   As Defendant AmGUARD delegated responsibility for
Plaintiff's claim to Defendant NARS, and by extension,
Defendant West, all Defendants are vicariously liable for
Defendant West's conduct within the scope of her employment as
a claims adjuster.

47. As agents of Plaintiff's fiduciary, Defendant NARS and
Defendant West were also bound by the fiduciary duty of
Defendant AmGUARD.

48. Based on information and belief, **Defendant West did not
conduct a reasonable investigation into Plaintiff's purchase
and/or ownership of the personal property listed on Plaintiff's
inventory form.** As a result, Defendant West's conduct in
requesting Plaintiff to seek an amended police report was done
without a good faith basis.

49. Based on information and belief, **Defendant West asked
Plaintiff to seek an amended police report to further delay
payment of Plaintiff's claim.**

50. Based on information and belief, **Defendant West also
believed Plaintiff could be deterred from pursuing his claim by
the need to seek an amended police report.**

51. Based on information and belief, **Defendant West asked
Plaintiff to seek an amended police report with the intention
of leveraging Plaintiff using the threat of criminal liability
for filing a false police report.**

52. **Defendant West's conduct was motivated by actual malice
engendered by her disputes with Mr. Osborn and her perception
that Mr. Osborn's complaints to Defendant AmGUARD (rather that**

**Defendant West's own malfeasance) caused her professional embarrassment.**

53.   On August 19, 2021, Mr. Osborn reply asking why it was necessary to ask the police to amend their report to include the inventory form.  In response, Defendant West wrote, "Required, please provide."

54.   Plaintiff and/or Mr. Osborn contacted the police, however they were not initially willing to amend their report as their investigation was ongoing.  Ultimately, Plaintiff was able to persuade the police to add the inventory of his personal property to the report.

55.   Mr. Osborn advised Defendant West of the status of the police investigation and insisted that Defendants honor their contractual obligation to Plaintiff.

56.   In response, Defendant West took personal offense and played the victim, suggesting that it was Mr. Osborn who was behaving unkindly to her.

57.   For reasons that remain unclear, Defendant West cast aspersions on Mr. Osborn's professional reputation and comically suggested that a successful, self-employed, insurance agent might like to apply to become a claims adjuster for a third-party administrator.

58. Highlighting the complete lack of appropriate supervision by Defendant NARS, Defendant West threw a tantrum and refused to communicate further with Mr. Osborn, notwithstanding that he was Plaintiff's agent on the account in question.

59. As a result of Defendant West's refusal to communicate further with Mr. Osborn, Mr. Osborn wrote to Defendant AmGUARD on August asking that another representative be assigned to review Plaintiff's claim.  (Email chain between Mr. Osborn and Defendant AmGUARD is attached hereto as **Exhibit G**).

60. Mr. Osborn expressly advised Defendant AmGUARD of the highly unusual step of demanding that an amended police report be sought.  Mr. Osborn further noted that Defendant West had already advised Plaintiff that she was submitting his claim for approval in the amount of $40,508.88.

61. On or about September 7, 2021, the professional and competent adjustor employed by Plaintiff's auto insurer issued the first of two checks for Plaintiff's stolen truck.  (Email chain between Plaintiff and his auto insurer is attached hereto as **Exhibit H**).

62. Mysteriously, Plaintiff's auto insurance claims adjustor did not require an amended police report, sworn statement and/or blood oath before paying Plaintiff's claim.

63.  As Plaintiff's auto insurer fulfilled their fiduciary duty to Plaintiff, Defendant West continued her scheme to wrongfully deny Plaintiff's claim by imposing an Examination Under Oath (EUO) on Plaintiff.

64.  On October 4, 2021, Defendant West contacted Plaintiff to advise him that a particular attorney would be conducting the EUO.  (Email chain between Plaintiff and Defendant West is attached hereto as **Exhibit I**).

65.  In response, Plaintiff requested a copy of all materials provided to EUO counsel.  This request was predicated on the fiduciary duties owed to Plaintiff by all Defendants.

66.  Defendant West advised Plaintiff that Defendant NARS does not provide copies of working claim files to claimants.

67.  On November 4, 2021, Defendants sent a formal letter to Plaintiff advising that they were questioning whether the policy covered Plaintiff's stolen personal property. (Reservation of rights letter is attached hereto as **Exhibit J**).

68.  That is to say, **nearly three months after Defendant West advised that she was drafting approval paperwork for Plaintiff's claim, Defendant first formally notified Plaintiff that they were disputing his claim.**

69. Based on information and belief, and particularly in view of the timing of Defendants' request, Plaintiff concludes that the purpose of the EUO was to harass and intimidate Plaintiff and to further delay the payment of his claim.

70. Relying on policy provisions governing cooperation by the insured, Defendants scheduled Plaintiff for an EUO on November 19, 2021. Notably, the policy includes a requirement that Defendants' requests for cooperation be reasonable. Exhibit B at 037.

71. Based on Defendants' unreasonable conduct in continually imposing new obligations on Plaintiff and delaying the payment of his claim, Plaintiff declined to appear for the EUO.

72. As Defendants refused to provide a copy of their claim file and in view of Defendants' consistent malfeasance, Plaintiff resolved to vindicate his rights in Federal Court where the Rules would assure him the fairness his fiduciaries would not.

## INTRODUCTION TO LEGAL COUNTS

Plaintiff is unaware whether Defendant NARS was acting at the behest of Defendant AmGUARD in wrongfully denying Plaintiff's claim. By extension, Plaintiff is unaware whether Defendant West was instructed and/or authorized by Defendants AmGUARD and/or NARS to handle Plaintiff's claim as she did. As

information bearing on these subjects is exclusively within the
custody and control of Defendants, Plaintiff asserts
inconsistent causes of action to preserve his rights.

## COUNT ONE
### COMMON LAW BAD FAITH DENIAL OF AN INSURANCE CLAIM
### PURSUANT TO PICKETT V. LLOYD'S, 131 N.J. 457 (1993)
### AS TO ALL DEFENDANTS

36. Plaintiff repeats and reiterates all of the allegations
    contained in all of the preceding paragraphs as though set
    forth at length herein.
37. For purposes of notice, Plaintiff alleges the cause of
    action first described in Pickett v. Lloyd's, 131 N.J. 457
    (1993).
38. For purposes of notice, Plaintiff alleges that the conduct
    of at least Defendant West was outrageous and motivated by
    actual malice above and beyond the bad faith required to
    establish liability.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants
for Compensatory and Punitive Damages, pre- and post-judgment
interest, attorneys' fees, costs of suit and such other relief
as the Court or jury may deem proper.

## COUNT TWO
### STATUTORY FRAUD IN VIOLATION OF
### N.J.S.A. 56:8-1 et seq. (NEW JERSEY CONSUMER FRAUD ACT)
### AND PURSUANT TO WEISS V. FIRST UNUM, 482 F.3d 254 (3d Cir. 2007)
### AS TO ALL DEFENDANTS

39. Plaintiff repeats and reiterates all of the allegations
    contained in all of the preceding paragraphs as though set
    forth at length herein.
40. For purposes of notice, Plaintiff seeks to recover treble
    statutory damages based on the value of his denied benefits.
41. For purposes of notice, this interpretation is consistent
    with Weiss v. First Unum, 482 F.3d 254 (3d Cir. 2007), in that
    Defendant West first promised to authorize Plaintiff's claim
    and then reneged in bad faith.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants
for Compensatory Damages, treble Statutory Damages, pre- and
post-judgment interest, attorneys' fees, costs of suit and such
other relief as the Court or jury may deem proper.

### COUNT THREE
### COMMON LAW TORTIOUS INTERFERENCE WITH CONTRACT
### AS TO DEFENDANTS NARS AND WEST

42. Plaintiff repeats and reiterates all of the allegations contained in all of the preceding paragraphs as though set forth at length herein.

**WHEREFORE**, Plaintiff hereby demands Judgment against Defendants for Compensatory and Punitive Damages, pre- and post-judgment interest, attorneys' fees, costs of suit and such other relief as the Court or jury may deem proper.

### COUNT FOUR
### VICARIOUS LIABILITY
### AS TO DEFENDANTS AMGUARD AND NARS

43. Plaintiff repeats and reiterates all of the allegations contained in all of the preceding paragraphs as though set forth at length herein.
44. For purposes of notice, Plaintiff avers that Defendant West was an agent of Defendant NARS acting within the scope of her employment at all times relevant hereto.
45. For purposes of notice, Plaintiff avers that Defendant NARS was an agent of Defendant AmGUARD acting with the scope of its employment at all times relevant hereto.

**WHEREFORE**, Plaintiff hereby demands Judgment against the Master for the Torts of the Servant as described in the preceding counts.

### COUNT FIVE
### FICTITIOUS PARTIES

46. Plaintiff repeats and reiterates all of the allegations contained in all of the preceding paragraphs as though set forth at length herein.
47. John Doe 1-10 and ABC Corporation 1-10 are fictitious individuals and entities, respectively, who may bear liability to Plaintiff related to the events described herein.
48. ABC Corporation 1-10 may be organizations involved in business relationships with Defendants AmGUARD and NARS related to the advertisement, sale and administration of Plaintiff's policy, including all organizations involved in the processing of Plaintiff's claim.

49. John Doe 1-10 may be employees of ABC Corporation 1-10 who engaged in tortious acts related to Plaintiff's policy and/or claim.

50. John Doe 1-10 may also be employees of Defendants AmGUARD and NARS who participated in the decision-making process that led to the wrongful denial of Plaintiff's claim.

51. John Doe 1-10 specifically may also be supervisors and/or colleagues of Defendant West who bore responsibility, whether professional, legal or ethical, to ensure Defendant West's compliance with relevant claim processing rules, including proper execution of the fiduciary duties delegated to Defendant West by Defendant AmGUARD and NARS.

**WHEREFORE**, Plaintiff hereby reserves the right to Amend his Complaint to substitute in newly-discovered parties for his fictitious parties in accordance with the Rules of Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DESIGNATION OF TRIAL COUNSEL

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DEMAND FOR DAMAGES

Plaintiff hereby demands damages from Defendants in the amount of $121,526.64, representing treble the lost insurance benefits plus punitive damages in an amount to be determined at trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

EXHIBIT A



# Island Heights Police Dept

Incident #: 21IH01932

Reporting Officer: Mellott, Rocco

Report Time: 06/25/2021 08:39:53

## Incident

| | | |
|---|---|---|
| Incident Nature **STOLEN VEHICLE** | Address **199 LAKE AVE ISLAND HEIGHTS, New Jersey 08732** | Occurred From **06/25/2021 08:39:38** |
| Occurred To **06/25/2021 08:39:43** | Received By **Castellano, Andrew M** | How Received **911 Line** |
| Contact **ROBERT FUGGI** | Disposition **Closed Case** | Miscellaneous Entry |
| Disposition Date **06/25/2021** | Cleared **N** | Judicial Status |
| Cleared Date | Clearance **Report Required** | Cargo Theft Related **N** |

Responding Officer(s)
Rutledge, Paul

Mellott, Rocco

Circumstances

Stolen Property

MOTOR VEHICLE THEFT

## Offenses

## Theft, Veh, Automobile

| | | |
|---|---|---|
| Completed? **C** | Method Of Entry | Gambling Motivated? |
| Premises Entered? | Location Type **20** | Cargo Theft Related? |
| Statute **2C:20-3(MV)** | Description **Theft of Motor Vehicle** | Category |

Bias Motivation

99

Offender Used

N

## Persons

### FUGGI, ROBERT R
### Victim

| | | |
|---|---|---|
| Address | Phone | DOB |
| 199 LAKE AVE; PO BOX 1106 ( ) - | | 10/22/1964 |
| ISLAND HEIGHTS New | | |
| Jersey 08732 | | |
| Race | Sex | Ethnicity |
| N-White, Non-Hisp | M | Non-Hispanic |
| Height | Weight | |
| 5'10" | 0 | |

## Vehicles

### 2018 Ford F15                                    Vehicle

| | | |
|---|---|---|
| License | State | Color |
| S51KFV | New Jersey | Black |
| VIN | Owner | License Type |
| 1FTFW1RG2JFB89120 | FUGGI, ROBERT R | |
| Value | Amount Recovered | |
| $1.00 | $0.00 | |

## Narratives

### Original Narrative                    06/25/2021 09:06:59

Stolen Vehicle.

### Supplemental          06/25/2021 09:07:01 Mellott, Rocco
### Narrative

I, Patrolman Mellott, responded to 199 Lake Avenue for a report of a stolen vehicle. Upon arrival, I spoke to the home owner who was identified as Robert Fuggi. Mr. Fuggi stated that around 3:00am on 06/25/21, his black Ford F15 was driven off his property without permission. Mr. Fuggi stated that no person has access to his vehicle and he is current on all payments. It was confirmed that there was no active repos for Mr. Fuggi and he was able to provide video evidence of the event. A copy of the video will be provided for evidence to this department. The video clearly shows the pickup truck being started and removed from Mr. Fuggi's driveway. Mr. Fuggi also explained that he leaves a spare key in the vehicle at all times. Located inside the vehicle was Mr. Fuggi's wallet containing multiple credit and debit cards. The pickup truck was reported stolen and the license plate bearing NJ registration, S51-KFV was reported stolen on NCIC. All evidence and report will be provided to Detective Curtis (255) for further investigation.

## Supplemental Narrative
**06/25/2021 10:10:45 Hubbard, Megan**

CAD Call info/comments
================================

08:39:59 06/25/21   - Castellano, A
2018 FORD RAPTOR BLACK IN COLOR

08:40:08 06/25/21   - Castellano, A
2018 FORD RAPTOR BLACK IN COLOR /

08:41:18 06/25/21   - Castellano, A
*EDITED* 2018 FORD RAPTOR BLACK IN COLOR / TAKEN AT 0300 / HAS IT ON CAMERA / NOT BEHIND
ON PAYMENTS / EXTRA KEY IN THE VEHICLE /

EXHIBIT B

Robert Fuggi
199 Lake Ave
Island Heights, NJ 08732-7701

*THANKS FOR SELECTING US*



**Berkshire Hathaway**
**GUARD** Insurance Companies
www.guard.com

In cooperation with
OSBORN INSURANCE AGENCY LLC

Robert Fuggi
199 Lake Ave
Island Heights, NJ 08732

## Thank you for choosing us!

Your new Homeowner's policy is provided by Berkshire Hathaway GUARD Insurance Companies – specifically AmGUARD Insurance Company.   Therefore, you can feel confident that your insurance has been placed with a financially secure organization committed to providing excellent customer service.  If you have a question about your policy or have a particular need, the combined professional staff of your agent (OSBORN INSURANCE AGENCY LLC) and our company will be available to assist you.

**Contact Your Agent for:**
- Any inquiries about coverage issues, features that have been incorporated into your policy, and endorsements.

**Agency phone: 848-232-3490**

**Contact Berkshire Hathaway GUARD Insurance Companies for:**
- Any inquiries about billing.
- Questions about the status of a claim or available services.

**Phone: 800-673-2465 – e-mail: csr@GUARD.com**

While our staff is always ready to help, we suggest you become familiar with our *Policyholder Service Center* accessible on-line at www.guard.com  To log in to this secure site, enter your e-mail address and the password you created. If you are a first time user, you will be asked to go through a simple registration process to create your log-in credentials; the information below will be needed to complete this process:

**Your Policy Number is ROHO193965.**
**Your Insurance Carrier is AmGUARD Insurance Company**
**Your Policy Effective Date is 07/06/2020**

From this Service Center, you will be able to accomplish most of your typical service needs such as:

- Obtaining a copy of your policy or some other insurance transactions.
- Getting a copy of your bill.
- Making a payment.
- Uploading documents (including photos) you want to get to us.
- And much more.

**To Report a Claim:**  *Call us immediately at 888-NEW-CLMS - 24 hours a day, seven days a week.*

We appreciate your business and look forward to the opportunity to serve your insurance needs during the upcoming policy year.  Please keep a copy of the letter handy for future reference.

**enclosed:   Homeowners Policy**

HQ: NJ/HO
DECTO I

*Property & Casualty Insurers*

HOMEOWNERS
HO P 004 05 11

# LIMITED HOME DAY CARE COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

> **CAUTION: This is a summary of the limited coverage provided in your Homeowners Policy for Home Day Care services. No coverage is provided by this summary nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations Page for complete information on the coverage you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF YOUR POLICY SHALL PREVAIL. PLEASE READ YOUR POLICY CAREFULLY.**

A. "Business", as defined in the policy, means:

1. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

2. Any other activity engaged in for money or other compensation, except the following:

    a. One or more activities:

    (1) Not described in b. through d. below; and

    (2) For which no insured receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    b. Volunteer activities for which no money is received, other than payment for expenses incurred to perform the activity;

    c. Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    d. The rendering of home day care services to a relative of an insured.

B. If you or any other insured regularly provides home day care services to a person or persons other than you or any other insureds as their trade, profession or occupation, that service is a "business".

C. If home day care service is not your or any other insured's given trade, profession or occupation but is an activity:

1. That you or any other insured engages in for money or other compensation; and

2. From which you or any other insured receives more than $2,000 in total/combined compensation from it and any other activity for the 12 months before the beginning of the policy period;

    the home day care service and other activity will be considered a "business".

D. With respect to C. above, home day care service is only an example of an activity engaged in for money that may be a "business". Any single activity or combination of activities:

1. Described in A.2. above; and

2. Engaged in for money by you or any other insured;

    may be considered a "business" if the $2,000 threshold is exceeded.

E. With respect to A. through D. above, coverage does not apply to or is limited with respect to home day care service which is a "business". For example, this policy:

1. Does not provide:

    a. Section II coverages. This is because your "business" or the "business" of any other insured is excluded under Section II – Exclusions;

    b. Coverage, under Section I, for other structures from which any "business" is conducted; and

EXHIBIT B – 004

2. Limits Section I coverage, under Coverage C – Special Limits Of Liability, for "business" property:

    a. On the residence premises for the home day care "business" to $2,500. This is because Coverage C – Special Limits Of Liability imposes that limit on "business" property on the residence premises;

    b. Away from the residence premises for the home day care "business" to $1,500. This is because Coverage C – Special Limits Of Liability imposes that limit on "business" property away from the residence premises. This limit does not apply to antennas, tapes, wires, records, disks or other media that are:

        (1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

        (2) In or upon a motor vehicle.

© Insurance Services Office, Inc., 2010
HO P 004 05 11
EXHIBIT B – 005

# ADVISORY NOTICE TO POLICYHOLDERS
# REGARDING HOME-SHARING SERVICES

This is a Notice regarding your Homeowners Policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this summary, THE PROVISIONS OF YOUR HOMEOWNERS POLICY SHALL PREVAIL.

This Notice provides information concerning the potential insurance implications for you of engaging in home-sharing arrangements through home-sharing companies.

Home-sharing companies typically offer home-sharing, or short-term rental, services which use smart-phone applications and other internet-based platforms to connect guests looking for rentals with homeowners or renters seeking to rent out their homes, spare rooms in their homes or apartments for compensation. These rentals may be on an extremely short-term (i.e., as short as one night) basis or as long as several months. The parties using these services can be acting as a host and renting out such spaces to others, or acting as a guest and utilizing someone else's space.

Your Homeowners Policy contains several provisions which may limit or exclude certain coverages when you participate in a home-sharing service, either when acting as a host or acting as a guest. For example:

- When acting as a host, and renting out space to others, coverage under your Homeowners Policy may, with certain exceptions, be limited or excluded with respect to:

  - Loss to a structure, other than your residence, that is rented or held for rental to others;

  - Loss to personal property of your roomers, boarders and other tenants;

  - Theft of your personal property from that part of your residence rented by you to others;

  - Loss of your appliances, carpeting and other household furnishings in each apartment regularly rented or held for rental to others; and

  - Your liability for bodily injury or property damage to others when the rentals occur more than occasionally.

- When acting as a guest, and utilizing someone else's space, coverage under your Homeowners Policy may be limited or excluded with respect to damage to property you rent, occupy, use or property that is in your care.

You should:
- Review your Homeowners Policy and any applicable home-sharing company provisions carefully; and
- Contact your insurance agent or broker to discuss potential gaps in insurance coverage under your policy and any protections which may be available.

## EXHIBIT A – POLICY SUMMARY:  HOMEOWNERS INSURANCE

**THIS SUMMARY HIGHLIGHTS THE NOTABLE COVERAGES AND EXCLUSIONS ASSOCIATED WITH YOUR HOMEOWNERS INSURANCE POLICY AND IS ONLY PROVIDED AS GUIDANCE IN HELPING YOU UNDERSTAND YOUR POLICY. THIS SUMMARY DOES NOT ALTER YOUR COVERAGE IN ANY WAY. YOUR INSURANCE POLICY IS A CONTRACT THAT GOVERNS YOUR LEGAL RIGHTS. PLEASE CONTACT [YOUR AGENT / US] IF YOU HAVE ANY QUESTIONS. REFER TO YOUR DECLARATIONS PAGE FOR INFORMATION ON DEDUCTIBLES AND THE SPECIFIC LIMITS OF YOUR POLICY FOR EACH OF THE INCLUDED COVERAGES. REFER TO THE APPLICABLE POLICY PROVISIONS FOR OTHER INFORMATION SPECIFIC TO THESE COVERAGES, AND ON ANY ADDED COVERAGES OR EXCLUSIONS IN YOUR POLICY. FOR ADDITIONAL GUIDANCE AND INFORMATION, SEE THE "INSURING YOUR HOME" GUIDE ON THE N.J. DEPT. OF BANKING AND INSURANCE WEBSITE AT:**

http://www.state.nj.us/dobi/division_consumers/pdf/insuringyourhome.pdf

**Most homeowners policies in New Jersey include the following common coverages:**
- Dwelling (Coverage A) pays if your house is damaged or destroyed by a covered loss.
- Other structures (Coverage B) pays if structures not attached to your house, such as detached garages, storage sheds, and fences are damaged or destroyed by a covered loss.
- Personal property (Coverage C) pays if the items in your house (such as furniture, clothing, and appliances) are damaged, stolen, or destroyed by a covered loss.
- Loss of use (Coverage D) pays your additional living expenses (costs over the normal amount for housing, food, and other essential expenses) if you must temporarily move because damage to your house from a covered loss renders it uninhabitable.
- Personal liability (Coverage E) pays to defend you in court against certain lawsuits and provides coverage if you are found legally responsible for someone else's injury or property damage.
- Medical payments to others (Coverage F) pays the medical bills of people hurt on your property. It might also pay for some injuries that happen away from your home, such as your dog biting someone at the park.

**Policy Features**
- Companies may exclude coverage for certain losses. Even the most comprehensive policy will exclude certain types of damage.
- All policies include an all-peril deductible. The deductible is the portion for which you are responsible on a covered property loss.
- Some policies may include a separate, optional wind/hail deductible, and/or a mandatory or optional hurricane deductible.
- Companies may offer optional coverages that include oil tank liability, coverage for water back up and sump pump overflow, ordinance or law coverage, earthquake and scheduled personal property such as jewelry, fine arts, furs or silverware.

| Your Policy Covers Losses Caused by | Your Policy Does Not Cover Losses Caused by |
|---|---|
| Fire and lightning | Flooding including tidal surge (Note: Flood insurance may be available through the National Flood Insurance Program - www.floodsmart.gov) |
| Sudden and accidental damage by smoke | Earthquakes, earth movement, landslides, mudslides & sinkholes |
| Explosion | Termites, insects, rats, mice, birds or other vermin |
| Theft | Freezing pipes (unless water was shut off or building was heated) |
| Vandalism and malicious mischief | Losses if your house is vacant for the number of days specified by your policy |
| Aircraft and vehicles | Wear and tear, rotting, maintenance and pollution |
| Windstorm or hail | Wind or hail damage to trees and shrubs |
| Sudden and accidental water damage | Mold, unless it is as a result of a covered loss (for example, mold damage due to flood would not be covered) |
| | Water damage resulting from continuous and repeated seepage |
| Weight of ice, snow or sleet | Liability which results from the ownership or use of an automobile and other types of |
| Riot and civil commotion | motorized land vehicles, aircraft or certain watercraft |
| | Intentional acts caused by you or a resident of your home |
| | War or Nuclear Hazard |

HOMEOWNERS
HO PN 04 09 17

## NEW JERSEY EARTHQUAKE INSURANCE AVAILABILITY NOTICE

All insureds and applicants are cautioned that homeowners and dwelling insurance policies do not provide coverage for earthquake damage.

The definition of an earthquake:

- Is the shaking or trembling of the earth that is geologic or tectonic in nature;
- Includes shock waves or tremors before, during or after a volcanic eruption; and
- Can also include after-shocks that occur within a seventy-two hour period following an earthquake.

A typical homeowners and dwelling insurance policy:

- Does not cover the cost to replace or repair your damaged dwelling, premises or structures, such as garages, resulting from an earthquake;
- Does not cover the cost to replace or repair contents of your home or business if the damages result from an earthquake; and
- Does not pay for any additional living expenses if your property is badly damaged or destroyed by an earthquake.

*Earthquake* insurance is available through an endorsement to your policy for an additional premium. The decision to purchase earthquake insurance is one that should be carefully considered based on individual circumstances.

Historically, an earthquake in New Jersey is a rare event, although the possibility exists that it could happen. Over the five year period from 2010 to 2015, for every $1 of earthquake insurance premium, 1/10 of one cent has been paid out for losses.

Please contact your agent if you have any questions or want additional information on how to obtain earthquake insurance.

This notice is a general description of coverage and does not change, modify or invalidate the provisions, terms or conditions of your policy or endorsements.

EXHIBIT B - 008

## THIS POLICY DOES NOT PROVIDE FLOOD INSURANCE

THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISION OF YOUR POLICY. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

Your policy does not insure against such water damage as storm surge, flood, surface water, waves, tidal water, overflow of a body of water, water which backs up through sewers or drains (unless your policy is endorsed to provide such coverage) and water below the surface of the ground. The National Flood Insurance Program (NFIP) may provide you with flood insurance if you live in a participating community. If you are interested in protection against flood, call us to see if your property is eligible for a flood insurance policy. The NFIP coverage contains separate contents and structure coverage, and you should consult with us as to whether the coverage selected is appropriate to meet your needs.

**YOU CAN HELP REDUCE THE CHANCES OF AND/OR THE AMOUNT OF DAMAGE BY WINDSTORM**

You can take certain precautions concerning a house or other buildings which have already been built in a manner which is intended to reduce the chance and/or amount of damage by windstorm to the interior and exterior of your home and other buildings. Here are a few actions to consider:

1. Installing storm shutters for all exterior openings such as windows, skylights and glass doors to prevent breakage. Shutters should be capable of withstanding hurricane force winds and wind-blown debris.

2. Having a professional reevaluate and, if necessary, strengthen entry and garage doors to withstand wind and flood loads and the force of wind-blown debris.

3. Having composition roof shingles checked and, if necessary, reinforced with additional nails or screws to more firmly secure them to the roof sheathing. Also, when you replace your shingles, replace or install a water-resistant membrane (tar-paper or hot-mopped underlayment) under the new shingles.

EXHIBIT B - 009

**HOMEOWNERS**
**HO PN 06 09 17**

## HOMEOWNERS AND DWELLING PROPERTY PROGRAMS
## OPTIONAL HURRICANE DEDUCTIBLE

THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISION OF YOUR POLICY.  YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES THAT ARE PROVIDED.  IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

Your policy insures against the peril for WINDSTORM.  The OPTIONAL higher hurricane deductible has been made available to you. You are not required to select this OPTIONAL higher hurricane deductible in order to obtain or maintain coverage. Because you may be responsible for a portion of the hurricane loss up to the deductible amount, the premium you would have otherwise paid has been reduced. Please refer to your Declarations page to see if this optional deductible is included.

Below, we have briefly outlined the key points associated with the hurricane deductible.

**ABOUT THE HURRICANE DEDUCTIBLE**

Your policy contains a basic deductible. A higher hurricane deductible applies when a hurricane, as described in the hurricane deductible endorsement attached to this policy, makes landfall anywhere in the state of New Jersey. This means that the higher deductible will apply to any windstorm loss to covered property that occurs during the period:

1.  Beginning 12 hours prior to the first time sustained hurricane force winds of 74 miles per hour or greater have been measured in New Jersey by the National Weather Service (regardless of whether the sustained hurricane force winds reach the risk insured under the policy);

2.  Continuing for the time period during which the hurricane conditions exist anywhere in New Jersey; and

3.  Ending 12 hours after the last time the hurricane force winds of 74 miles per hour or greater have been measured in New Jersey by the National Weather Service (regardless of whether the sustained hurricane force winds reach the risk insured under the policy).

Otherwise, the lower basic deductible applies. "Declared" means declared by the National Weather Service.

The deductible amounts to both the higher hurricane deductible and the basic deductible are shown on the Policy Declarations Page included with this policy.

After submission of a claim for an optional insured hurricane loss, your claim will be settled taking into account the optional hurricane deductible. The actual dollar amount of the deductible can be computed as follows:

Multiply the Coverage A limit by the hurricane deductible percent listed on your policy.

For example:
$155,000 (Coverage A Limit)

$155,000 (Coverage A Limit) x .02 (If you have a 2% Hurricane Deductible) = $3,100 (Deductible Amount)

We will not apply this hurricane deductible to any claim made for additional living expenses and/or loss of rental income. Additional living expenses and/or loss of rental income will be subject to the lower basic policy deductible shown on your Policy Declarations page.

You have the option to change your hurricane deductible or eliminate it completely. If you decrease or eliminate your deductible, your premium will increase. If you increase your deductible, your premium will decrease.

EXHIBIT B - 010

**HOMEOWNERS**
**HO PN 07 09 17**

## ATTENTION SENIOR CITIZENS

THIS DISCLOSURE NOTICE DOES NOT PROVIDE COVERAGE NOR DOES THIS NOTICE REPLACE ANY PROVISION OF YOUR POLICY.   YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED.   IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

New Jersey law allows policyholders age 62 and older to designate a third party to receive copies of notices of cancellation, nonrenewal and conditional renewal. We are required to notify you annually of this option.

If you qualify and would like to designate a third party to receive these notices, you must send us your request by certified mail. The request must contain a written acceptance from the third party. Designation as a third party for receipt of cancellation, nonrenewal and conditional renewal notices shall not constitute acceptance of any liability on the designated party for services provided to the insured.

EXHIBIT B - 011



P.O. Box A-H
Wilkes-Barre, PA 18703-0020
570-825-9900
800-673-2465
www.guard.com

# PRIVACY POLICY

Rev. February, 2020

## WHAT DO BERKSHIRE HATHAWAY GUARD INSURANCE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

| FACTS | Berkshire Hathaway GUARD Insurance Companies include:  AmGUARD Insurance Company, AZGUARD Insurance Company, EastGUARD Insurance Company, NorGUARD Insurance Company, WestGUARD Insurance Company, GUARD.Co, Inc., (a medical management affiliate). |
|---|---|
| Why? | Financial Companies choose how they share your personal information.  Federal and State law gives consumers the right to limit some, but not all, sharing.  Federal law also requires us to tell you how we collect, share, and protect your personal information.  Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend upon the product or service you have with us. This information can include:<br>• **Social Security Number, date of birth, driving record, income**<br>• **Credit history, credit-based insurance scores, insurance claim history, payment history**<br>When you are no longer our customer, we continue to share your information as described in this notice. |
| How? | All financial companies may need to share customers' personal information to run their everyday business. In the section below, we list the reasons insurance companies share their customers' personal information; the reasons we choose to share; and whether you can limit this sharing. |

| REASONS WE CAN SHARE YOUR PERSONAL INFORMATION | Does Berkshire Hathaway GUARD share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, comply with government agency examinations/procedures, or report your creditworthiness. | Yes | No |
| **For our marketing/processing purposes—** to offer our products and services to you. (We may also disclose information received from you with companies that perform services for us.) | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences. | Yes | No |
| **For our affiliates' everyday business purposes—** information about your creditworthiness. | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | Yes | Yes |

| To limit our sharing | Call Customer Service at 1-800-673-2465 or visit us online at www.guard.com/privacy/.<br><br>Please note: If you are a new customer, we can begin sharing your information 30 days from the date we provided this notice.  When you are no longer our customer, we continue to share your information as described in this notice in accordance with applicable law. However, you can contact us at any time to limit our sharing in accordance with the table above. |
|---|---|
| Questions? | Call Customer Service at 1-800-673-2465. |

Includes Copyrighted Material of the National Association of Insurance Commissioners

BHGIC-672-02-20

PAGE 2

| Who we are | |
|---|---|
| **Who is providing this notice?** | Berkshire Hathaway GUARD Insurance Companies (including property and casualty licensees AmGUARD Insurance Company, AZGUARD Insurance Company, NorGUARD Insurance Company, EastGUARD Insurance Company, and/or WestGUARD Insurance Company as well as GUARDCo, Inc.) is providing this notice. References in this form to "us", "we" or "our" refers to these companies. |
| **What we do** | |
| **How do we protect your personal information?** | To protect your personal information from unauthorized access and use, we implement security measures that comply with applicable law. These measures include computer safeguards and secured files and buildings. |
| **How do we collect your personal information?** | We collect your personal information, for example, when you:<br>• apply for insurance<br>• pay insurance premiums<br>• file an insurance claim<br>• give us your income information<br>• give us your contact information.<br><br>We also collect your personal information from others (such as credit bureaus, affiliates, or other companies) including, for example, from:<br>• your insurance agent or producer<br>• your transactions with our affiliates listed below or other consumer reporting agencies. |
| **Why can't I limit all sharing?** | Applicable law gives you the right to limit only:<br>• sharing for affiliates everyday business purposes – information about your creditworthiness and insurability<br>• affiliates from using your information to market to you<br>• sharing for non-affiliates to market to you. |
| **What happens when I limit sharing for a policy I hold jointly with someone else?** | Your choices will apply to everyone on your policy. |

| Definitions | |
|---|---|
| ***Affiliates*** | *Companies (other than the companies identified in "Facts" above) that are related to us by common ownership or control of Berkshire Hathaway Inc. Affiliates can be financial and nonfinancial companies.* |
| ***Non-affiliates*** | *Companies not related to us by common ownership or control, which can be financial and nonfinancial companies.* |
| ***Marketing*** | *The promotion or advertising of insurance products or services to you. Marketing partners may include, but are not limited to, insurance licensees such as insurance agents appointed by us or their affiliates.* |

## Other Important Information

**Important Information about Credit Reporting:** We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

**For California Residents:** If you opt out, we will not share information we collect about you with nonaffiliated third parties, except as permitted by California law, such as to process your transactions or to maintain your account. Please visit www.guard.com/privacy-policy/ to review our California Privacy Policy.

**For Vermont Residents:** We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

Includes Copyrighted Material of the National Association of Insurance Commissioners BHGIC-672-02-20

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. Please read this Notice carefully.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

EXHIBIT B - 014



**HOMEOWNERS POLICY DECLARATIONS**

**AmGUARD Insurance Company**
**A Stock Company**

Issued: 07/06/2020

Policy No.:  ROHO193965                                      Renewal of: NEW

### POLICY INFORMATION PAGE

**[1]    Named Insured and Address**

| | |
|---|---|
| Named Insured: | Robert Fuggi |
| Residence Premises: | 199 Lake Ave, Island Heights, Island Heights, NJ 08732-7791 |
| Mailing Address: | 199 Lake Ave, Island Heights, NJ 08732-7791 |

**[2]    Agency**
OSBORN INSURANCE AGENCY LLC, 1868 Route 88, Brick, NJ 08724,

**[3]    Policy Period**
From July 6, 2020 to July 6, 2021, 12:01 AM, standard time at the residence Premises

**[4]    Coverage**
This policy consists of the Coverage Forms listed on the Schedule of Forms and Endorsements.
Coverage is provided where a premium or limit of liability is shown (below) for the coverage.

| Section I | Limits of Liability | |
|---|---|---|
| A.  Dwelling | $ 800,000 | |
| B.  Other Structures | $ 80,000 | |
| C.  Personal Property | $ 560,000 | |
| D.  Loss of Use | $ 240,000 | |
| Section II | | |
| E.  Personal Liability | $ 500,000 | Each Occurrence |
| F.  Medical Payments to Others | $ 3,000 | Each Person |

**[5]    Premium**

| | |
|---|---|
| Basic Policy Premium | $ 2,584.00 |
| Additional Premium Charges Related to Other Coverages or Endorsements  This amount is the total of the premium for all additional optional charges; the individual coverages and charges are shown on the next page. | $ 372.00 |
| Total Premium | $ 2,956.00 |
| State Surcharge | $ 17.74 |
| Total Cost | $ 2,973.74 |

In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.

EXHIBIT B - 015

<div align="right">

**HOMEOWNERS POLICY
DECLARATIONS**

</div>

Issued:  07/06/2020

Policy No.:  ROHO193965                              Effective Date:  07/06/2020

<u>Deductible:</u>

Section I  All Perils: $ 1000  Other - Theft: Same as All Peril  Hurricane: 1%

<div align="center">

**ADDITIONAL PROTECTION ELECTED**

</div>

| COVERAGE | LIMIT | PREMIUM |
|---|---|---|
| Business Property | | 53.00 |
|    Off-Premises Limit | 5,000 | |
|    On-premises Limit | 10,000 | |
| Coverage C - Other Residences | | |
|    Limit | 55,000 | |
| Coverage C - Self-storage Facilities | | |
|    Limit | 55,000 | |
| Coverage C - Special Limits of Liability | | 93.00 |
|    Jewelry, Watches and Furs Limit | 5,000 | |
|    Money Limit | 1,000 | |
|    Securities Limit | 3,000 | |
|    Silverware, Goldware & Pewterware Limit | 10,000 | |
|    Firearms Limit | 5,000 | |
|    Portable Electronic Equipment in or upon a motor Vehicle Limit | 1,500 | |
| Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money Coverage | | 2.00 |
|    Limit | 10,000 | |
| Damage to Property of Others | | |
|    Limit | 1,000 | |
| Debris Removal | | |
|    Limit | 5%/1,000 | |
| Fire Department Service Charge | | |
|    Limit | 500 | |
| Grave Markers | | |
|    Limit | 5,000 | |
| Home Systems Protection Coverage | | 30.00 |
|    Limit | 50,000 | |
| Identity Fraud Expense Coverage | | 8.00 |
|    Limit | 25,000 | |
| Landlord's Furnishings | | 6.00 |
|    Limit | 10,000 | |
| Limited Fungi, Wet or Dry Rot or Bacteria Coverage | | |
|    Section I Limit | 10,000 | |
|    Section II Limit | 50,000 | |
| Refrigerated Personal Property | | 4.00 |
|    Deductible | 100 | |
|    Limit | 500 | |
| Service Line Coverage | | 30.00 |
|    Limit | 10,000 | |
| Supplemental Loss Assessment Coverage | | 8.00 |
|    Residence Premises Limit | 50,000 | |
| Trees, Shrubs and Other Plants | | |
|    Limit | 5%/500 | |

**HO DEC SSC 11 18**                                         **Page 2 of 9**

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/06/2020

Policy No.: ROHO183965                                      Effective Date: 07/06/2020

Water Backup & Sump Overflow                                              137.00
  Limit                                          10,000
Workers Compensation Coverage Domestic Servants or Household Employees    1.00
  Limit of Liability                             100,000

EXHIBIT B – 017

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/06/2020

Policy No.: ROHO193965                                    Effective Date: 07/06/2020

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| HO WEL LET | WELCOME LETTER |
| HO P 004 05 11 | LIMITED HOME DAY CARE COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| HO P 083 10 15 | ADVISORY NOTICE TO POLICYHOLDERS |
| HO PN 01 09 17 | Exhibit A - Policy Summary - Homeowners Insurance |
| HO PN 04 09 17 | New Jersey Earthquake Insurance Availability Notice |
| HO PN 05 09 17 | Flood Insurance Notice |
| HO PN 06 09 17 | Optional Hurricane Deductible Notice |
| HO PN 07 09 17 | Senior Citizens Notice |
| HO PRIV POL | PRIVACY POLICY |
| IL P 001 01 04 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ('OFAC') ADVISORY NOTICE TO POLICYHOLDERS |
| HO DEC SSC 11 15 | HOME OWNERS POLICY DECLARATIONS |
| HO 00 05 05 11 | HOMEOWNERS 5 - COMPREHENSIVE FORM |
| HO 01 29 05 11 | Special Provisions - New Jersey |
| HO 03 30 05 11 | HURRICANE DEDUCTIBLE |
| HO 04 12 05 11 | INCREASED LIMITS ON BUSINESS PROPERTY |
| HO 04 27 05 11 | LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE |
| HO 04 35 05 11 | SUPPLEMENTAL LOSS ASSESSMENT COVERAGE |
| HO 04 53 10 00 | CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE |
| HO 04 65 05 11 | COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY |
| HO 04 90 05 11 | PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT |
| HO 04 95 01 14 | LIMITED WATER BACK-UP and SUMP DISCHARGE or OVERFLOW COVERAGE |
| HO 04 98 05 11 | REFRIGERATED PROPERTY COVERAGE |
| HO 05 46 10 00 | LANDLORD'S FURNISHINGS |
| HO 06 48 10 15 | RESIDENCE PREMISES DEFINITION ENDORSEMENT |
| HO 06 55 02 17 | HOME-SHARING HOST ACTIVITIES AMENDATORY ENDORSEMENT |
| HO 24 92 04 02 | NJ Workers Compensation and Employers Liability Coverage for Residence Employees Endorsement |
| HO 34 02 02 17 | AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT |
| HO 99 82 08 17 | IDENTITY RECOVERY COVERAGE |
| HO 99 83 08 17 | PROTECTIVE DEVICES |
| HO 99 89 08 17 | SERVICE LINE COVERAGE |
| HO 99 90 08 17 | HOME SYSTEMS PROTECTION |
| HO FCRA | Notice of Consumer Rights Under the Fair Credit Report Act |
| IL 99 00 08 13 | Authorization and Attestation |

HO DEC SSC 11 15                                                         Page 4 of 9

HOMEOWNERS POLICY
DECLARATIONS

Issued:  07/08/2020

Policy No.:  ROHO183985                          Effective Date:  07/08/2020

EXHIBIT B - 019

<div align="right">

**HOMEOWNERS POLICY
DECLARATIONS**

</div>

Issued:  07/06/2020

Policy No.:  ROHO193965                                    Effective Date:  07/06/2020

<div align="center">

**OTHER INSURED LOCATIONS**

</div>

Address(es)

<div align="center">

**MORTGAGEE(S)/LIENHOLDER(S)**

</div>

**Name**                          **Address**                          **Loan Number**

<div align="center">

**LOSS PAYEE(S)**

</div>

**Name**                          **Address**                          **Personal Property**

HO DEC SSC 11 18                                                      Page 6 of 9

EXHIBIT B - 020

<div align="right">

**HOMEOWNERS POLICY**
**DECLARATIONS**

</div>

Issued:  07/06/2020

Policy No.:  ROHO193965                                     Effective Date:  07/06/2020

<div align="center">

**PROTECTIVE DEVICES**

</div>

As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 53 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request.

**Name of Device**

Fire Alarm: Central Station

Burglar Alarm: Central Station

Issued: 07/06/2020

Policy No.: ROHO193965                  Effective Date:  07/06/2020

## RECAP OF UNDERLYING POLICY INFORMATION PROVIDED TO US

Your coverage with us has been written based on the following information provided by you either directly or through your authorized representative:

### Information about the Residence

| | |
|---|---|
| Year built | 1998 |
| Square footage | 2783 |
| Type occupancy | Owner Occupied |
| Number of families accommodated | 1 |
| Owner or tenant occupied | Owner |
| Type electrical box | Circuit Breaker |
| Most recent plumbing update | N/A |
| Number of losses last three years | 0 |
| (New Home Buyers Only) | |
| Date of Inspection – N/A for Not Applicable | N/A |

### Roof

| | |
|---|---|
| Date of last update | 2015 |
| Shape | Gable |
| Primary covering used | Composition - Architectural Shingle |
| Hail resistance class | Unknown |

### Heating

| | |
|---|---|
| Primary Type | Natural Gas |
| Other Secondary Type(s)/Appliances Used | N/A |

### Pets

| | |
|---|---|
| Pets | No |
| Number of dogs | N/A |
| Breed(s) includes one of the following -- pit bulls, Rottweilers, Wolf Hybrids, or a mixed breed that includes one of these. | N/A |
| History of Biting | N/A |
| Exotic | N/A |
| Description N/A | |

### Further Details

| | Yes | No | N/A |
|---|---|---|---|
| Purchased within the last six months | | X | |
| Primarily used for residential purposes | X | | |
| Seasonal/secondary dwelling | | X | |
| Dwelling will not be unoccupied for more than 30 days | X | | |
| Mobile home, trailer home, or house trailer | | X | |
| Underground oil tanks on property | | X | |
| Swimming pool | | X | |
| Swimming pool within area enclosed by a fence | | | X |
| Diving board for swimming pool | | | X |
| Trampoline | | X | |
| Trampoline in enclosed area | | | X |
| Use of drones | | X | |
| Any residents with a history of smoking | | X | |
| Used as a farm | | X | |
| Structure is a rowhouse/townhouse | | X | |
| Features log home constructions | | X | |

HO DEC SSC 11 18            Page 8 of 9

Issued:  07/06/2020

Policy No.:  ROHO193965                                    Effective Date:  07/06/2020

EXHIBIT B - 023

# HOMEOWNERS 5 – COMPREHENSIVE FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. You and residents of your household who are:

      (1) Your relatives; or

      (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

   b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

      (1) 24 and your relative; or

      (2) 21 and in your care or the care of a resident of your household who is your relative; or

c. Under Section II:

(1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in 5.a. or b. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

(2) With respect to a "motor vehicle" to which this policy applies:

(a) Persons while engaged in your employ or that of any person described in 5.a. or b.; or

(b) Other persons using the vehicle on an "insured location" with your consent.

Under both Sections I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

(1) Which is shown in the Declarations; or

(2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in a. and b. above;

d. Any part of a premises:

(1) Not owned by an "insured"; and

(2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one-family dwelling where you reside;

b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

## A. Coverage A – Dwelling

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

© Insurance Services Office, Inc., 2010
EXHIBIT B - 025

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

  2. We do not cover land, including land on which the dwelling is located.

**B. Coverage B – Other Structures**

  1. We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

  2. We do not cover:

    a. Land, including land on which the other structures are located;

    b. Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

    c. Other structures from which any "business" is conducted; or

    d. Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

  3. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

**C. Coverage C – Personal Property**

  1. Covered Property

    We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

    a. Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    b. A guest or a "residence employee", while the property is in any residence occupied by an "insured"

  2. Limit For Property At Other Locations

    a. Other Residences

    Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    (1) Moved from the "residence premises" because it is:

      (a) Being repaired, renovated or rebuilt; and

      (b) Not fit to live in or store property in; or

    (2) In a newly acquired principal residence for 30 days from the time you begin to move the property there.

    b. Self-storage Facilities

    Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 10% of the limit of liability for Coverage C, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

    (1) Moved from the "residence premises" because it is:

      (a) Being repaired, renovated or rebuilt; and

      (b) Not fit to live in or store property in; or

    (2) Usually located in an "insured's" residence, other than the "residence premises".

  3. Special Limits Of Liability

    The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage C limit of liability.

    a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    b. $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

EXHIBIT B – 026

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

c. $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

d. $1,500 on trailers or semitrailers not used with watercraft of all types.

e. $1,500 for loss by theft, misplacing or losing of jewelry, watches, furs, precious and semiprecious stones.

f. $2,500 for loss by theft, misplacing or losing of firearms and related equipment.

g. $2,500 for loss by theft, misplacing or losing of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

h. $2,500 on property, on the "residence premises", used primarily for "business" purposes.

i. $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle".

j. $1,500 on portable electronic equipment that:

(1) Reproduces, receives or transmits audio, visual or data signals;

(2) Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

(3) Is in or upon a "motor vehicle".

k. $250 on antennas, tapes, wires, records, disks or other media that are:

(1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

(2) In or upon a "motor vehicle"

4. **Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

This includes a "motor vehicle's" equipment and parts.

However, this Paragraph 4.c. does not apply to:

(1) Portable electronic equipment that:

(a) Reproduces, receives or transmits audio, visual or data signals; and

(b) Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

(2) "Motor vehicles" not required to be registered for use on public roads or property which are:

(a) Used solely to service a residence; or

(b) Designed to assist the handicapped;

d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

We do not cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided under E.10. Landlord's Furnishings under Section I – Property Coverages;

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

(1) Books of account, drawings or other paper records; or

(2) Computers and related equipment.

© Insurance Services Office, Inc., 2010
EXHIBIT B - 027

We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in E.8. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages; or

k. Water or steam.

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage D is the total limit for the coverages in 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use below.

1. **Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. **Fair Rental Value**

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

3. **Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense and 2. Fair Rental Value above for no more than two weeks.

4. **Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under 1. Additional Living Expense, 2. Fair Rental Value and 3. Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

1. **Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit is available for such expense.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

(2) A neighbor's trees felled by a Peril Insured Against;

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

2. **Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

EXHIBIT B - 028

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in C.4. under Section I – Conditions.

## 3. Trees, Shrubs And Other Plants

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

## 4. Fire Department Service Charge

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

## 5. Property Removed

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

## 6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money

a. We will pay up to $500 for:

(1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

(2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

(3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

(4) Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

b. We do not cover:

(1) Use of a credit card, electronic fund transfer card or access device:

(a) By a resident of your household;

(b) By a person who has been entrusted with either type of card or access device; or

(c) If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

(2) Loss arising out of "business" use or dishonesty of an "insured".

c. If the coverage in a. above applies, the following defense provisions also apply:

(1) We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

(2) If a suit is brought against an "insured" for liability under a.(1) or (2) above, we will provide a defense at our expense by counsel of our choice.

© Insurance Services Office, Inc., 2010

(3) We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under a.(3) above.

7. **Loss Assessment**

a. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against, other than:

(1) Earthquake; or

(2) Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

b. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

c. Paragraph Q. Policy Period under Section I — Conditions does not apply to this coverage.

This coverage is additional insurance.

8. **Collapse**

This Additional Coverage applies to property covered under Coverages A and B.

a. The coverage provided under this Additional Coverage — Collapse applies only to an abrupt collapse.

b. For the purposes of this Additional Coverage — Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

c. This Additional Coverage — Collapse does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

d. We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

(1) The Perils Insured Against under Coverages A and B;

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

e. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under d.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

f. This coverage does not increase the limit of liability that applies to the damaged covered property.

9. **Glass Or Safety Glazing Material**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

(3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because the glass or safety glazing material has been broken, except as provided in a.(3) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in a.(2) above. A dwelling being constructed is not considered vacant.

c. This coverage does not increase the limit of liability that applies to the damaged property.

**10. Landlord's Furnishings**

We will pay up to $2,500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused only by the following Perils Insured Against:

**a. Fire Or Lightning**

**b. Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

**c. Explosion**

**d. Riot Or Civil Commotion**

**e. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**f. Vehicles**

**g. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**h. Vandalism Or Malicious Mischief**

**i. Falling Objects**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**j. Weight Of Ice, Snow Or Sleet**

This peril means weight of ice, snow or sleet which causes damage to property contained in a building.

**k. Accidental Discharge Or Overflow Of Water Or Steam**

(1) This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

(2) This peril does not include loss:

(a) To the system or appliance from which the water or steam escaped;

(b) Caused by or resulting from freezing except as provided in m. Freezing below;

(c) On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

(d) Caused by mold, fungus or wet rot unless hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

(3) In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

© Insurance Services Office, Inc., 2010

EXHIBIT B - 031

l. **Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

m. **Freezing**

(1) This peril means freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance but only if you have used reasonable care to:

  (a) Maintain heat in the building; or

  (b) Shut off the water supply and drain all systems and appliances of water.

  However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

(2) In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

n. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

o. **Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

This limit is the most we will pay in any one loss regardless of the number of items, carpeting or other household furnishings involved in the loss.

This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance Or Law**

a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

(2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

(3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

(1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

(2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure.

  Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

12. Grave Markers

We will pay up to $5,000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against.

This coverage does not increase the limits of liability that apply to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

We insure against direct physical loss to property described in Coverages A, B and C.

We do not insure, however, for loss:

A. Under Coverages A, B and C:

1. Excluded under Section I – Exclusions;

2. Caused by:

   a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

      (1) Maintain heat in the building; or

      (2) Shut off the water supply and drain all systems and appliances of water.

      However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

      For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

   b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

      (1) Fence, pavement, patio or swimming pool;

      (2) Footing, foundation, bulkhead, wall, or any other structure or device, that supports all or part of a building or other structure;

      (3) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

      (4) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Mold, fungus or wet rot. However, we do insure for loss caused by mold, fungus or wet rot that is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure if such loss results from the accidental discharge or overflow of water or steam from within:

   (1) A plumbing, heating, air conditioning or automatic fire protective sprinkler system, or a household appliance, on the "residence premises"; or

   (2) A storm drain, or water, steam or sewer pipes, off the "residence premises".

   For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

e. Any of the following:

   (1) Wear and tear, marring, deterioration;

   (2) Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

   (3) Smog, rust or other corrosion, or dry rot;

   (4) Smoke from agricultural smudging or industrial operations;

   (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against in a. through o. as listed in E.10. Landlord's Furnishings under Section I – Property Coverages.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   (6) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

   (7) Birds, rodents or insects;

© Insurance Services Office, Inc., 2010

(8) Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

(9) Animals owned or kept by an "insured".

**Exception To 2.e.**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A, B or C resulting from an accidental discharge or overflow of water or steam from within a:

    (I) Storm drain, or water, steam or sewer pipe, off the "residence premises"; or

    (II) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I – Exclusion A.3. Water, Paragraphs a. and c. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under d. and e. above.

Under 2.a. through e. above, any ensuing loss to property described in Coverages A, B and C not precluded by any other provision in this policy is covered.

**B. Under Coverages A and B:**

1. Caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

2. Involving collapse, including any of the following conditions of property or any part of the property:

    a. An abrupt falling down or caving in;

    b. Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

    c. Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to a. or b. above;

other than as provided in E.8. Collapse under Section I – Property Coverages. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

**C. Under Coverage C caused by:**

1. Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches bronzes, cameras and photographic lenses.

However, there is coverage for breakage of the property by or resulting from:

    a. Fire, lightning, windstorm, hail;

    b. Smoke, other than smoke from agricultural smudging or industrial operations;

    c. Explosion, riot, civil commotion;

    d. Aircraft, vehicles, vandalism and malicious mischief;

    e. Collapse of a building or any part of a building;

    f. Water not otherwise excluded;

    g. Theft or attempted theft; or

    h. Sudden and accidental tearing apart, cracking, burning or bulging of:

        (1) A steam or hot water heating system;

        (2) An air conditioning or automatic fire protective sprinkler system; or

        (3) An appliance for heating water;

2. Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

3. Refinishing, renovating or repairing property other than watches, jewelry and furs;

4. Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors; or

 © Insurance Services Office, Inc., 2010

EXHIBIT B – 034

5. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage C not precluded by any other provision in this policy is covered.

## SECTION I – EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. Ordinance Or Law

   Ordinance Or Law means any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion A.1.a. does not apply to the amount of coverage that may be provided for in E.11. Ordinance Or Law under Section I – Property Coverages;

   b. The requirements of which result in a loss in value to property; or

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This Exclusion A.1. applies whether or not the property has been physically damaged.

2. Earth Movement

   Earth Movement means:

   a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting.

   This Exclusion A.2. applies regardless of whether any of the above, in A.2.a. through A.2.d., is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in A.2.a. through A.2.d., is covered.

3. Water

   This means:

   a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

   b. Water which:

      (1) Backs up through sewers or drains; or

      (2) Overflows or is otherwise discharged from a sump, sump pump or related equipment;

   c. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

   d. Waterborne material carried or otherwise moved by any of the water referred to in A.3.a. through A.3.c. of this exclusion.

   This Exclusion A.3. applies regardless of whether any of the above, in A.3.a. through A.3.d., is caused by an act of nature or is otherwise caused.

   This Exclusion A.3. applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

   However, direct loss by fire, explosion or theft resulting from any of the above, in A.3.a. through A.3.d., is covered.

   This exclusion does not apply to property described in Coverage C that is away from a premises or location owned, rented, occupied or controlled by an "insured".

   This exclusion applies to property described in Coverage C that is on a premises or location owned, rented, occupied or controlled by an "insured" even if weather conditions contribute in any way to produce the loss.

4. Power Failure

   Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

© Insurance Services Office, Inc., 2010

EXHIBIT B – 035

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion A.7. pertains to Nuclear Hazard to the extent set forth in N. Nuclear Hazard Clause under Section I – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

**B.** We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded by any other provision in this policy is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

**SECTION I – CONDITIONS**

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

1. Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

2. If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, or an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages;

4. Protect the property from further damage. If repairs to the property are required, you must:

a. Make reasonable and necessary repairs to protect the property; and

b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

© Insurance Services Office, Inc., 2010
EXHIBIT B – 036

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonably require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of all "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in 6. above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

**D. Loss Settlement**

In this Condition D., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in E.11. Ordinance Or Law under Section I – Property Coverages. Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings covered under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

      (1) The limit of liability under this policy that applies to the building;

      (2) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

      (3) The necessary amount actually spent to repair or replace the damaged building.

      If the building is rebuilt at a new premises, the cost described in (2) above is limited to the cost which would have been incurred if the building had been built at the original premises.

   b. If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

      (1) The actual cash value of that part of the building damaged; or

      (2) That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

   c. To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

      (1) Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

© Insurance Services Office, Inc., 2010
EXHIBIT B - 037

(2) Those supports described in (1) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(3) Underground flues, pipes, wiring and drains.

d. We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in 2.a. and b. above.

However, if the cost to repair or replace the damage is both:

(1) Less than 5% of the amount of insurance in this policy on the building; and

(2) Less than $2,500;

we will settle the loss as noted in 2.a. and b. above whether or not actual repair or replacement is complete.

e. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition D. Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

EXHIBIT B - 038

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs F. Appraisal, H. Suit Against Us and J. Loss Payment under Section I – Conditions also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

**SECTION II – LIABILITY COVERAGES**

**A. Coverage E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

EXHIBIT B - 039

**B. Coverage F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

**SECTION II – EXCLUSIONS**

**A. "Motor Vehicle Liability"**

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place:

         (a) On an "insured location" as defined in Definition B.6.a., b., d., e. or h.; or

         (b) Off an "insured location" and the "motor vehicle" is:

            (i) Designed as a toy vehicle for use by children under seven years of age;

            (ii) Powered by one or more batteries; and

            (iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

   e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

      (1) A golfing facility and is parked or stored there, or being used by an "insured" to:

         (a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

         (b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

         (c) Cross public roads at designated points to access other parts of the golfing facility; or

      (2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

EXHIBIT B – 040

**B.** "Watercraft Liability"

1. Coverages E and F do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

   a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

   b. Rented to others;

   c. Used to carry persons or cargo for a charge; or

   d. Used for any "business" purpose.

2. If Exclusion B.1. does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

   a. Is stored;

   b. Is a sailing vessel, with or without auxiliary power, that is:

   (1) Less than 26 feet in overall length; or

   (2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

   c. Is not a sailing vessel and is powered by:

   (1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

   (a) 50 horsepower or less and not owned by an "insured"; or

   (b) More than 50 horsepower and not owned by or rented to an "insured"; or

   (2) One or more outboard engines or motors with:

   (a) 25 total horsepower or less;

   (b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

   (c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

   (d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

   (i) You declare them at policy inception; or

   (ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in (c) and (d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

**C.** "Aircraft Liability"

This policy does not cover "aircraft liability".

**D.** "Hovercraft Liability"

This policy does not cover "hovercraft liability".

**E.** Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverage E and F do not apply to the following:

1. Expected Or Intended Injury

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

   a. Is of a different kind, quality or degree than initially expected or intended; or

   b. Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. "Business"

   a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

   This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

   b. This Exclusion E.2. does not apply to:

   (1) The rental or holding for rental of an "insured location";

   (a) On an occasional basis if used only as a residence;

   (b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

   (c) In part, as an office, school, studio or private garage; and

© Insurance Services Office, Inc., 2010

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions A. "Motor Vehicle Liability", B. "Watercraft Liability", C. "Aircraft Liability", D. "Hovercraft Liability" and E.4. "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. Coverage E – Personal Liability

Coverage E does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in b. Loss Assessment under Section II – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in a. above or elsewhere in this policy;

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

a. Is also an insured under a nuclear energy liability policy issued by the:

(1) Nuclear Energy Liability Insurance Association;

EXHIBIT B - 042

(2) Mutual Atomic Energy Liability Underwriters;

(3) Nuclear Insurance Association of Canada;

or any of their successors; or

b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition 5.a. or b.

This exclusion also applies to any claim made or suit brought against you or an "insured" to:

a. Repay; or

b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

G. Coverage F – Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

a. Occurs off the "insured location"; and

b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

a. Workers' compensation law;

b. Non-occupational disability law; or

c. Occupational disease law;

3. From any:

a. Nuclear reaction;

b. Nuclear radiation; or

c. Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

a. To the extent of any amount recoverable under Section I;

b. Caused intentionally by an "insured" who is 13 years of age or older;

c. To property owned by an "insured";

d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

e. Arising out of:

(1) A "business" engaged in by an "insured";

(2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

(3) The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion e.(3) does not apply to a "motor vehicle" that:

(a) Is designed for recreational use off public roads;

(b) Is not owned by an "insured"; and

(c) At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

1. We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

      (1) Is elected by the members of a corporation or association of property owners; and

      (2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

2. Paragraph I. Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and the "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of the "occurrence"; and

   c. Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to C. Damage To Property Of Others under Section II – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

 © Insurance Services Office, Inc., 2010

EXHIBIT B – 044

D. **Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

E. **Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

F. **Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

G. **Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

H. **Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

I. **Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

J. **Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

A. **Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

B. **Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

C. **Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

© Insurance Services Office, Inc., 2010      HO 00 05 05 11
EXHIBIT B – 045

(2) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage F or Paragraph C. Damage To Property Of Others under Section II – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

EXHIBIT B – 046

HOMEOWNERS
HO 01 23 05 11

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PROVISIONS – NEW JERSEY

## DEFINITIONS

Paragraph A. is replaced by the following:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and:

1. The spouse; or
2. A party who, with the "named insured", has entered into a civil union recognized under New Jersey law;

if a resident of the same household.

"We", "us" and "our" refer to this Company providing this insurance.

## SECTION I – EXCLUSIONS

Paragraph 8. Intentional Loss is replaced by the following:

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

However, this exclusion will not apply to deny payment to a co-"insured", who did not cooperate in or contribute to the creation of the loss, if the loss arose out of domestic violence.

If we pay a claim pursuant to Paragraph 8., our payment to the "insured" is limited to that "insured's" insurable interest in the property. In no event will we pay more than the Limit of Liability.

(This is Paragraph A.8. in Forms HO 00 03 and HO 00 05.)

## SECTION I – CONDITIONS

Paragraph J. Loss Payment is replaced by the following:

J. **Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

Loss is payable within 10 working days after:

1. We reach an agreement with you and you have satisfied any and all conditions of the agreement; or

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

L. **Mortgage Clause**

Paragraph 3. is replaced by the following:

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 30 days before the date cancellation or nonrenewal takes effect.

(This Condition does not apply to Form HO 00 04.)

## SECTION II – LIABILITY COVERAGES

A. **Coverage E – Personal Liability**

Paragraph 1. is replaced by the following in all forms and Endorsements HO 24 73 and HO 24 82:

1. Pay up to our limit of liability for damages for which an "insured" is legally liable; and

Paragraph 1. is replaced by the following in Endorsement HO 24 10:

1. Pay for the damages for which an "insured" is legally liable, subject to the Aggregate Limit Of Liability, as shown in the Schedule and described in Section II – Conditions, A. Aggregate Limit Of Liability; and

## SECTION II – EXCLUSIONS

E. **Coverage E – Personal Liability And Coverage F – Medical Payments To Others**

Paragraph 1. Expected Or Intended Injury is replaced by the following in all forms and Endorsement HO 24 73:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage", with respect to all "insureds", which is expected or intended by an "insured", even if the "bodily injury" or "property damage":

a. is of a different kind, quality or degree than initially expected or intended; or

b. is sustained by a different person, entity, or property than initially expected or intended.

However, this Exclusion E.1. does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property.

EXHIBIT B – 047

This Exclusion E.1. applies to all "insureds", notwithstanding the provision in Section II – Conditions Paragraph B. Severability Of Insurance.

Paragraph 8. Controlled Substances is replaced by the following in all forms:

**8. Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include, but are not limited to, cocaine, LSD, marijuana and all narcotic drugs.

However, this exclusion does not apply to:

a. The legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional; or

b. The "insured(s)" who have no knowledge of the involvement with a controlled substance(s). An "insured's" knowledge of such involvement must be shown by us by competent evidence of such knowledge.

(This is Paragraph E.9. in Endorsement HO 24 73.)

**SECTION II – ADDITIONAL COVERAGES**

**A. Claims Expenses**

The following paragraph is added:

5. Prejudgment interest awarded against the "insured" on that part of the judgment we pay.

**SECTION II – CONDITIONS**

Paragraph A. Limit Of Liability is replaced by the following:

**A. Limit Of Liability**

1. Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Limit Of Liability for Coverage E as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

2. Subject to Paragraph 1. above, our total liability under Coverage E for damages for which an "insured" is legally liable because of vicarious liability, whether or not statutorily imposed, for the actions of a child or minor, if such vicarious liability is not otherwise excluded, is $10,000. The sublimit is within, but does not increase, the Coverage E Limit Of Liability.

3. The limit of liability in 1. above and sublimit in 2. above apply regardless of the number of "insureds", claims made or persons injured.

4. Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as a result of one accident will not be more than the Limit Of Liability for Coverage F as shown in the Declarations.

This condition does not apply with respect to damages arising out of "fungi", wet or dry rot, or bacteria when Endorsement HO 04 26, HO 04 27 or HO 04 28 is attached.

**SECTIONS I AND II – CONDITIONS**

Paragraph C. Cancellation is replaced by the following:

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation takes effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice, stating the reasons for cancellation, may be delivered to you or mailed to you at your mailing address shown in the Declarations by certified mail, or first-class mail if we have obtained, from the U.S. Post Office, a date-stamped proof of mailing showing your name and address. Written notice of cancellation will also be mailed to any person or organization entitled to notice under the policy.

a. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel by letting you know at least:

(1) 10 days before the date cancellation takes effect, if we cancel for either: nonpayment of premium; or the existence of a moral hazard, which is defined in N.J.A.C. 11:1-20.2(f) as follows:

(a) The risk, danger or probability that the "insured" will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an "insured" that will increase the probability of such a destruction may be considered a moral hazard; and

© Insurance Services Office, Inc., 2010

EXHIBIT B - 046

(b) The substantial risk, danger or probability that the character, circumstances or personal habits of the "insured" may increase the possibility of loss or liability for which we will be held responsible. Any change in character or circumstances of an individual, corporate, partnership or other "insured" that will increase the probability of such a loss or liability may be considered a moral hazard.

(2) 30 days before the date cancellation takes effect if we cancel for any other reason.

b. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) and stated in C.2.a.(1)(a) and C.2.a.(1)(b) above;

(3) Material misrepresentation or nondisclosure to us of a material fact at the time of acceptance of the risk;

(4) Increased hazard or material change in the risk assumed which we could not have reasonably contemplated at the time of assumption of the risk;

(5) Substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

(6) Lack of cooperation from the "insured" on loss control matters materially affecting insurability of the risk;

(7) Fraudulent acts against us by the "insured" or the "insured's" representative that materially affect the nature of the risk insured;

(8) Loss of or reduction in available insurance capacity;

(9) Material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

(10) Loss of or substantial changes in applicable reinsurance;

(11) Failure by the "insured" to comply with any Federal, State or local fire, health, safety, building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

(12) Failure by the "insured" to provide reasonable and necessary underwriting information to us upon written request therefore and a reasonable opportunity to respond;

(13) Agency termination, provided:

(a) We document that replacement coverage at comparable rates and terms has been provided to you, and we have informed you, in writing, of your right to continue coverage with us; or

(b) We have informed you, in writing, of your right to continue coverage with us and you have agreed, in writing, to the cancellation based on the termination of your appointed agent; or

(14) Any other reason in accordance with our underwriting guidelines for cancellation of Homeowners insurance.

c. If we cancel this policy based on Paragraph C.2.b.(1) or C.2.b.(2) above, we may do so by letting you know at least 10 days before the date cancellation takes effect. For cancellation due to nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date of cancellation set forth in the notice. If we cancel this policy for any other reason listed in C.2.b. above, we may cancel by letting you know not more than 120 days nor less than 30 days before the date cancellation takes effect.

d. We need not send notice of cancellation if you have:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

Paragraph D. Nonrenewal is replaced by the following:

**D. Nonrenewal**

1. We may elect not to renew this policy for any reason permitted to cancel this policy. If we elect not to renew this policy, we will deliver or mail a notice of nonrenewal, stating the reasons for nonrenewal, to you at least 30 days but not more than 120 days before the expiration date of this policy. If this policy does not have a fixed expiration date, it will be deemed to expire annually on the anniversary of its inception.

2. This nonrenewal notice may be delivered to you or mailed to you at your mailing address shown in the Declarations by:

   a. Certified mail; or

   b. First-class mail if we have obtained, from the U.S. Post Office, a date-stamped proof of mailing showing your name and address.

3. We need not mail or deliver this nonrenewal notice if you have:

   a. Replaced coverage elsewhere; or

   b. Specifically requested termination.

**F. Subrogation**

The following is added:

If we pay an "insured", who is a victim of domestic violence, for a loss caused by an act of domestic violence, the rights of that "insured" to recover damages from the perpetrator of the domestic violence are transferred to us to the extent of our payment. That "insured" may not waive such rights to recover against the perpetrator of the domestic violence.

Paragraph G. Death is replaced by the following:

**G. Death**

If any person named in the Declarations, or:

   a. The spouse, if a resident of the same household; or

   b. A party who, with the "named insured", has entered into a civil union recognized under New Jersey law, if a resident of the same household;

dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

   a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

   b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

The following conditions are added:

**Insurance Department Requirement – Cancellation And Nonrenewal**

Pursuant to New Jersey law, this policy cannot be cancelled or nonrenewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the "insured". The underwriting reasons or guidelines that an insurer can use to cancel or nonrenew this policy are maintained by the insurer in writing and will be furnished to the "insured" and/or the "insured's" lawful representative upon written request.

This provision shall not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

**Insurance Department Requirement – Standard Fire Insurance Policy**

This policy provides coverage to the "insured" on an equivalent or more favorable basis than that provided by the statutory provisions cited in N.J.S.A. 17:36-5.20.

All other provisions of this policy apply.

 © Insurance Services Office, Inc., 2010 HO 01 29 05 11

POLICY NUMBER:

HOMEOWNERS
HO 03 30 06 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# HURRICANE DEDUCTIBLE – NEW JERSEY

### SCHEDULE

| Hurricane Deductible: |
| --- |
| Information required to complete this Schedule. If not shown above, will be shown in the Declarations. |

**SECTION I – CONDITIONS**

**B. Deductible**

The following special deductible is added to the policy:

**Hurricane Deductible**

1. With respect to the peril of Windstorm Or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the applicable hurricane deductible described in Paragraph 2. below.

2. The applicable hurricane deductible:

   a. Is either:

      (1) The dollar amount shown in the Schedule as the Hurricane Deductible; or

      (2) If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage A Limit Of Liability shown in the Declarations by the percentage shown as the Hurricane Deductible in the Schedule.

   b. Only applies to loss caused by the peril of Windstorm that occurs, in the event of a hurricane named by the National Weather Service or its successor from which sustained hurricane force winds of 74 miles per hour or greater have been measured in New Jersey by the National Weather Service, during the period:

      (1) Beginning 12 hours prior to the first time that sustained hurricane force winds of 74 miles per hour or greater have been measured by the National Weather Service;

      (2) Continuing for the time period during which the hurricane conditions exist; and

      (3) Ending 12 hours after the last time the hurricane force winds of 74 miles per hour or greater have been measured by the National Weather Service;

      anywhere in the state of New Jersey.

3. This deductible amount does not apply to loss under Coverage D – Loss Of Use. Instead, the deductible amount that applies to loss under Coverage D will be the same as the deductible amount that would have been applied to the peril of fire.

4. Refer to the policy Declarations for the deductible that applies to windstorm loss if the circumstances of the windstorm loss, described above, do not apply.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2010

EXHIBIT B – 051

POLICY NUMBER:

<div align="right">

HOMEOWNERS
HO 04 12 05 11

</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INCREASED LIMITS ON BUSINESS PROPERTY

### SCHEDULE

| Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|
| $ | $ |
| $ | $ |
| $ | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**SECTION I – PROPERTY COVERAGES**

**Coverage C – Personal Property**

**3. Special Limits Of Liability**

    **a.** The Special Limit Of Liability in Category 3.h. that applies to "business" property on the "residence premises" is increased by the Increase In Limit Of Liability shown in the Schedule above.

        This Increase In Limit Of Liability does not apply to "business" property:

      **(1)** In storage or held:

        **(a)** As a sample; or

        **(b)** For sale or delivery after sale; or

      **(2)** That pertains to a "business" actually conducted on the "residence premises".

    **b.** The Special Limit Of Liability in Category 3.i. that applies to "business" property away from the "residence premises" is increased to an amount that is 60 percent of the Total Limit Of Liability shown in the Schedule.

    This endorsement does not increase the limit of liability for Coverage C.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2010

EXHIBIT B - 052

POLICY NUMBER:

<div align="right">HOMEOWNERS<br>HO 04 27 05 11</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

## SCHEDULE

| | These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|---|
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| 2. | Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | $ |
| | Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**DEFINITIONS**

The following definition is added:

"Fungi"

    a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    b. Under Section II, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I – PROPERTY COVERAGES**

**E. Additional Coverages**

Paragraph 10.k.(2)(d) is deleted in Form HO 00 05 only.

The following Additional Coverage is added:

13. "Fungi", Wet Or Dry Rot, Or Bacteria

    a. The amount shown in the Schedule above is the most we will pay for:

        (1) The total of all loss payable under Section I – Property Coverages caused by "fungi", wet or dry rot, or bacteria;

        (2) The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section I – Property Coverages;

        (3) The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

        (4) The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

    b. The coverage described in 13.a. only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    c. The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

        (1) Number of locations insured under this endorsement; or

        (2) Number of claims made.

    d. If there is covered loss or damage to covered property, not caused, in whole or in part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

EXHIBIT B - 053

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form HO 00 03:

A. Coverage A – Dwelling And Coverage B – Other Structures

Paragraph 2.c.(6) is replaced by the following:

(6) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.c.(6)(c) is replaced by the following:

(c) Smog, rust or other corrosion;

B. Coverage C – Personal Property

12. Accidental Discharge Or Overflow Of Water Or Steam

Paragraph b.(4) is replaced by the following:

(4) Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form HO 00 05:

A. Under Coverages A, B and C:

Paragraph 2.d. is replaced by the following:

d. Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph 2.e.(3) is replaced by the following:

(3) Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion A.10. is added:

10. "Fungi", Wet Or Dry Rot, Or Bacteria

"Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

This exclusion does not apply:

a. When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

b. To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I – Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION I – CONDITIONS

Condition Q. Policy Period is replaced by the following:

Q. Policy Period

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition A. Limit Of Liability is replaced by the following:

A. Limit Of Liability

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F Limit Of Liability shown in the Declarations.

© Insurance Services Office, Inc., 2010

EXHIBIT B – 054

However, our total liability under Coverage E for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section II – Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

1. Number of locations insured under the policy to which this endorsement is attached;

2. Number of persons injured;

3. Number of persons whose property is damaged;

4. Number of "insureds"; or

5. Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage E limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in Condition A. Limit Of Liability of this endorsement, Condition B. Severability Of Insurance is replaced by the following:

B. Severability Of Insurance

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section II – Conditions, A. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

POLICY NUMBER:

<div align="right">

HOMEOWNERS
HO 04 35 05 11
</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SUPPLEMENTAL LOSS ASSESSMENT COVERAGE

### SCHEDULE

| A. "Residence Premises" – Additional Amount Of Insurance:  $ |
| --- |

| B. Additional Locations | |
| --- | --- |
| Location Of Unit Or Premises | Limit Of Liability |
| $ | |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**1. Additional Insurance – Residence Premises**

We will pay, up to the additional amount of insurance shown in A. in the Schedule above, for one or more assessments arising out of a single loss covered under:

a. Section I – Additional Coverage E.7. Loss Assessment (This is Additional Coverage C.7. in Form HO 00 04 and D.7. in Form HO 00 06.);

b. Section II – Additional Coverage D. Loss Assessment; or

c. Both Section I and Section II.

**2. Additional Locations**

We will pay, up to the Limit Of Liability shown in B. in the Schedule, your share of covered loss assessments as described in Section I – Additional Coverage E.7. Loss Assessment and Section II – Additional Coverage D. Loss Assessment of the policy, arising out of the unit or premises listed in B. in the Schedule above. This is the most we will pay for one or more assessments arising out of a single loss covered under:

a. Either Section I – Additional Coverage E.7. Loss Assessment or Section II – Additional Coverage D. Loss Assessment; or

b. Both Section I and Section II.

**3. Section II – Exclusion**

Section II – Exclusion F.1.a. does not apply to this coverage.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2010

EXHIBIT B – 056

POLICY NUMBER:

HOMEOWNERS
HO 04 53 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CREDIT CARD, ELECTRONIC FUND TRANSFER CARD OR ACCESS DEVICE, FORGERY AND COUNTERFEIT MONEY COVERAGE
### INCREASED LIMIT

### SCHEDULE*

SECTION I – PROPERTY COVERAGES
  ADDITIONAL COVERAGES
    6.  Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money
       The limit of liability for this coverage is increased as noted below.

| Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|
|  |  |

All other provisions of this policy apply.

*Entries may be left blank if shown elsewhere in this policy for this coverage.

EXHIBIT B - 057

POLICY NUMBER:

<div align="right">

**HOMEOWNERS**
HO 04 96 05 11
</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COVERAGE C INCREASED SPECIAL LIMITS OF LIABILITY

### SCHEDULE

| | Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|---|
| **SECTION I – PROPERTY COVERAGES**<br>**COVERAGE C – PERSONAL PROPERTY**<br>**3.   Special Limits Of Liability**<br>The special limits of liability are increased as noted below:<br><br>**Property** | | |
| a.   Money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins medals scrip stored value cards and smart cards. | $ | $ |
| b.   Securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records passports tickets and stamps. | $ | $ |
| c.   Jewelry, watches, furs, precious and semiprecious stones for loss by theft, misplacing or losing, but not more than $1 000 for any one article. | $ | $ |
| f.   Firearms and related equipment for loss by theft, misplacing or losing. | $ | $ |
| g.   Silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware for loss by theft misplacing or losing. | $ | $ |
| j.   Portable electronic equipment that:<br><br>(1)   Reproduces, receives or transmits audio, visual or data signals;<br><br>(2)   Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and<br><br>(3)   Is in or upon a "motor vehicle". | $ | $ |
| All other provisions of this policy apply. | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

EXHIBIT B - 058

HOMEOWNERS
HO 04 90 05 11

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT

**A. Eligible Property**

1. Covered losses to the following property are settled at replacement cost at the time of the loss:

   a. Coverage C; and

   b. If covered in this policy:

      (1) Awnings, outdoor antennas and outdoor equipment; and

      (2) Carpeting and household appliances;

      whether or not attached to buildings.

2. This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

   a. Jewelry;

   b. Furs and garments:

      (1) Trimmed with fur; or

      (2) Consisting principally of fur;

   c. Cameras, projection machines, films and related articles of equipment;

   d. Musical equipment and related articles of equipment;

   e. Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

      (1) Pens or pencils;

      (2) Flasks;

      (3) Smoking implements; or

      (4) Jewelry; and

   f. Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

   Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

**B. Ineligible Property**

   Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

1. Antiques, fine arts, paintings and similar articles of rarity or antiquity, which cannot be replaced.

2. Memorabilia, souvenirs, collectors items and similar articles, whose age or history contribute to their value.

3. Articles not maintained in good or workable condition.

4. Articles that are outdated or obsolete and are stored or not being used.

**C. Replacement Cost Loss Settlement Condition**

   The following loss settlement condition applies to all property described in A.:

1. We will pay no more than the least of the following amounts:

   a. Replacement cost at the time of loss without deduction for depreciation;

   b. The full cost of repair at the time of loss;

   c. The limit of liability that applies to Coverage C, if applicable;

   d. Any applicable special limits of liability stated in this policy; or

   e. For loss to any item described in A.2.e. - f. above, the limit of liability that applies to the item.

2. If the cost to repair or replace the property described in A. above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

3. You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us, within 180 days after the date of the loss, of your intent to repair or replace the damaged property.

All other provisions of this policy apply.

EXHIBIT B - 059

POLICY NUMBER:                                                                    **HOMEOWNERS**
                                                                                  **HO 04 95 01 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED WATER BACK-UP AND
# SUMP DISCHARGE OR OVERFLOW COVERAGE

## SCHEDULE

| Limited Water Back-up And Sump Discharge Or Overflow Coverage Limit Of Liability: | $ 10,000 |
|---|---|
| Information required to complete this Schedule if not shown above will be shown in the Declarations. | |

**A. Section I – Property Coverages**

    **E. Additional Coverages**

      The following coverage is added:

      **Limited Water Back-up And Sump Discharge Or Overflow Coverage**

      We will pay up to the Limit Of Liability shown in the Schedule for direct physical loss, not caused by the negligence of an "insured", to property covered under Section I caused by water, or waterborne material, which:

      1. Originates from within the dwelling where you reside and backs up through sewers or drains; or

      2. Overflows or is discharged from a:

        a. Sump, sump pump; or

        b. Related equipment;

      even if such overflow or discharge results from mechanical breakdown or power failure. This coverage does not apply to direct physical loss of the sump pump, or related equipment, which is caused by mechanical breakdown or power failure.

      This coverage does not increase the limits of liability for Coverage A, B, C or D stated in the Declarations.

**B. Section I – Perils Insured Against**

    With respect to the coverage provided under this endorsement, Paragraphs:

    A.2.e.(6)(b) in Form HO 00 03;

    A.2.e.(2) in Form HO 00 05;

    2.j.(2) in Endorsement HO 05 24;

    3.j.(2) in Endorsement HO 17 31; and

    2.e.(6)(b) in Endorsement HO 17 32;

    are replaced by the following:

    Latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**C. Section I – Exclusions**

    With respect to the coverage provided under this endorsement:

    1. The Water Exclusion is replaced by the following:

      **Water**

      This means water which backs up through sewers or drains, or overflows or is discharged from a sump, sump pump or related equipment, as a direct or indirect result of:

      a. Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

      b. Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

      c. Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs C.1.a. and C.1.b. of this exclusion.

      This exclusion applies regardless of whether any of the above, in Paragraphs C.1.a. through C.1.c., is caused by an act of nature or is otherwise caused.

      This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

      However, direct loss by fire, explosion or theft resulting from any of the above, in Paragraphs C.1.a. through C.1.c., is covered.

    2. The Power Failure Exclusion does not apply.

    All other provisions of this policy apply.

EXHIBIT B - 060

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# REFRIGERATED PROPERTY COVERAGE

**A. Definitions**

With respect to the provisions of this endorsement only, the following definition is added:

"Loss of power" means the complete or partial interruption of electric power due to conditions beyond an "insured's" control.

**B. Section I – Property Coverages**

The following coverage is added:

1. We insure, for up to $500, covered property stored in freezers or refrigerators on the "residence premises" for direct loss caused by:

   a. "Loss of power" to the refrigeration unit. "Loss of power" must be caused by damage to:

      (1) Generating equipment; or

      (2) Transmitting equipment; or

   b. Mechanical failure of the unit which stores the property.

2. Coverage will apply only if you have maintained the refrigeration unit in proper working condition immediately prior to the loss.

3. This endorsement does not increase the limit of liability for Coverage C.

**C. Section I – Exclusions**

The Power Failure exclusion does not apply to this coverage.

**D. Section I – Conditions**

The following replaces any other deductible provision in this policy with respect to any one loss covered under this endorsement:

We will pay only that part of the total of all loss payable that exceeds $100.

All other provisions of this policy apply.

© Insurance Services Office, Inc., 2010

POLICY NUMBER:                                                    HOMEOWNERS
                                                                 HO 05 46 10 00

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LANDLORD'S FURNISHINGS
### FORMS HO 00 02, HO 00 03 AND HO 00 05 ONLY

#### SCHEDULE*

| Description Of Rented Unit | Increase In Limit Of Liability | Total Limit Of Liability |
|---|---|---|
| 1. | $ | $ |
| 2. | $ | $ |
| 3. | $ | $ |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

Additional Coverage E.10. Landlord's Furnishings under Section I – Property Coverages is extended:

1. As indicated in the Schedule above; and

2. Subject to the Coverage C limit that applies at the time of loss.

All other provisions of this policy apply.

EXHIBIT B – 062

HOMEOWNERS
HO 06 48 10 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# RESIDENCE PREMISES
# DEFINITION ENDORSEMENT

**DEFINITIONS**

Definition B.11. is replaced by the following:

11. "Residence premises" means:

   a. The one-family dwelling where you reside;

   b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

   c. That part of any other building where you reside;

on the inception date of the policy period shown in the Declarations and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

All other provisions of this Policy apply.

© Insurance Services Office, Inc., 2015

EXHIBIT B - 063

HOMEOWNERS
HO 06 55 02 17

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HOME-SHARING HOST ACTIVITIES
# AMENDATORY ENDORSEMENT

**DEFINITIONS**

**A.** The following definitions are added:

1. "Home-sharing host activities" means:

   **a.** The:

   (1) Rental or holding for rental; or

   (2) Mutual exchange of services;

   of the "residence premises", in whole or in part, by an "insured" to a "home-sharing occupant" through the use of a "home-sharing network platform"; and

   **b.** Any other related property or services made available by an "insured" for use during such:

   (1) Rental; or

   (2) Mutual exchange of services;

   except those property or services provided by another party.

2. "Home-sharing network platform" means an online-enabled application, web site or digital network that:

   **a.** Is used for the purpose of facilitating, for money, mutual exchange of services or other compensation, the rental of a dwelling or other structure, in whole or in part; and

   **b.** Allows for the agreement and compensation with respect to such rental to be transacted through such online-enabled application, web site or digital network.

3. "Home-sharing occupant" means a person, other than an "insured", who:

   **a.** Has entered into an agreement or arranged compensation with an "insured" through the use of a "home-sharing network platform" for "home-sharing host activities"; or

   **b.** Is accompanying or staying with a person described in Paragraph 3.a. of this provision under such "home-sharing host activities".

**B.** Definition B.3. "Business" is replaced by the following:

3. "Business" means:

   **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis;

   **b.** "Home-sharing host activities"; or

   **c.** Any other activity engaged in for money or other compensation, except the following:

   (1) One or more activities, not described in (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

   (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

   (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

   (4) The rendering of home day care services to a relative of an "insured".

**C.** In this Policy, the terms:

1. Roomer;

2. Boarder;

3. Tenant; or

4. Guest;

do not include a "home-sharing occupant".

**SECTION I – PROPERTY COVERAGES**

**C.** Coverage C – Personal Property

Paragraphs f. and g. of 4. Property Not Covered are replaced by the following:

We do not cover:

f. Property of:

(1) A "home-sharing occupant";

(2) Any other person occupying the "residence premises" as a result of any "home-sharing host activities"; and

(3) Roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in:

(1) A space while rented or primarily held for rental to a "home-sharing occupant"; or

(2) Subject to Paragraph C.4.g.(1), property in an apartment regularly rented or held for rental to others by an "insured" except as provided in E.10. Landlord's Furnishings under Section I – Property Coverages;

The following provision is added to 4. Property Not Covered:

We do not cover property used primarily for "home-sharing host activities".

D. Coverage D – Loss Of Use

Paragraph D.2. Fair Rental Value is replaced by the following:

2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

However, we do not cover any fair rental value arising out of or in connection with "home-sharing host activities".

Payment will be for the shortest time required to repair or replace such premises.

SECTION I – PERILS INSURED AGAINST

We do not insure, however, for loss:

A. Under Coverages A, B and C:

Paragraph A.2.c. is replaced by the following:

c. Theft

(1) If such loss arises out of or results from "home-sharing host activities"; or

(2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

B. Under Coverages A and B:

Paragraph B.1. is replaced by the following:

1. Caused by vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if:

a. The loss arises out of or results from "home-sharing host activities"; or

b. The dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

Section C. is replaced by the following:

C. Under Coverage C caused by:

1. Breakage of eyeglasses, glassware, statuary, marble, bric-a-brac, porcelains and similar fragile articles other than jewelry, watches, bronzes, cameras and photographic lenses.

However, there is coverage for breakage of the property by or resulting from:

a. Fire, lightning, windstorm, hail;

b. Smoke, other than smoke from agricultural smudging or industrial operations;

c. Explosion, riot, civil commotion;

d. Aircraft, vehicles, vandalism and malicious mischief;

e. Collapse of a building or any part of a building;

f. Water not otherwise excluded;

g. Theft or attempted theft; or

h. Sudden and accidental tearing apart, cracking, burning or bulging of:

(1) A steam or hot water heating system;

(2) An air conditioning or automatic fire protective sprinkler system; or

(3) An appliance for heating water;

2. Dampness of atmosphere or extremes of temperature unless the direct cause of loss is rain, snow, sleet or hail;

3. Refinishing, renovating or repairing property other than watches, jewelry and furs;

4. Collision, other than collision with a land vehicle, sinking, swamping or stranding of watercraft, including their trailers, furnishings, equipment and outboard engines or motors;

 © Insurance Services Office, Inc., 2016 HO 06 55 02 17

EXHIBIT B – 065

5. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body. However, any ensuing loss to property described in Coverage C not precluded by any other provision in this Policy is covered; or

6. Vandalism or malicious mischief to property arising out of or resulting from "home-sharing host activities".

## SECTION II – EXCLUSIONS

Exclusion E.2. is replaced by the following:

Coverages E and F do not apply to the following:

2. "Business"

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. With respect to other than "home-sharing host activities", this Exclusion E.2. does not apply to:

(1) The rental or holding for rental of an "insured location":

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

Exclusion G.4. is replaced by the following:

Coverage F does not apply to "bodily injury":

4. To:

a. A "home-sharing occupant"; or

b. Any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

The following provision is added:

**Personal Injury Coverage**

If the Personal Injury Coverage endorsement is made a part of this Policy, Exclusion 1.g. is replaced by the following:

This insurance does not apply to:

1. "Personal injury":

g. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

With respect to other than "home-sharing host activities", this exclusion does not apply to:

(1) The rental or holding for rental of an "insured location":

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

All other provisions of this Policy apply.

Policy Number:

HOMEOWNERS
HO 24 92 04 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW JERSEY
# WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE
# FOR RESIDENCE EMPLOYEES ENDORSEMENT

## SCHEDULE – COMPLETE ONLY FOR FULL TIME SERVANTS.

| Code No. | Classification Of Employees | No. Of Employees | Rate Per Employee | Premium |
|---|---|---|---|---|
| 0913 | Private Residence or Estate – Full Time Inservants | | | |
| 0912 | Private Residence – Full Time Outservants incl. drivers | | | |
| 0915 | Private Estate – Full Time Outservants incl. drivers | | | |

We agree, with respect to "residence employees":

**UNDER COVERAGE I**

To pay when due all benefits required of an "insured" by the New Jersey Workers' Compensation Law; and

**UNDER COVERAGE II**

To pay on behalf of an "insured" all damages for which the "insured" is legally liable because of "bodily injury" sustained by a "residence employee". The "bodily injury" must be caused by accident or disease and arise out of and in the course of employment by the "insured" while:

1. In the United States of America, its territories or possessions, or Canada, or

2. Temporarily elsewhere if the "residence employee" is a citizen or resident of the United States or Canada. Coverage II does not apply to any suit brought in or judgment rendered by any court outside the United States of America, its territories and possessions, or Canada or to any action in such judgment.

**APPLICATION OF COVERAGE**

This insurance applies only to:

1. "Bodily injury" occurring during the policy period, or

2. Occupational disease or cumulative injury of a "residence employee" who during the term of this policy actually worked for the "insured" during the last day of employment, which exposed the employee to the hazard of the occupational disease or cumulative injury.

**POLICY PROVISIONS**

This insurance is subject to all the provisions of this Endorsement and the following provisions of this policy:

1. Under Sections I and II – Conditions:
   B. Waiver Or Change Of Policy Provisions.
   C. Cancellation.
   E. Assignment.
   F. Subrogation.

2. Under Section II – Conditions:
   C. Duties After "Occurrence".
   F. Suit Against Us.

3. Our agreement to defend the "insured" as provided under Coverage E – Personal Liability.

4. Under Section II – Additional Coverages:
   A. Claim Expenses.
   B. First Aid Expenses.

5. The definition of "bodily injury", "business", "insured" and "residence employee".

**LIMIT OF LIABILITY – COVERAGE II**

Our total limit of liability shall not exceed $100,000 for all damages because of "bodily injury":

1. Sustained by one or more "residence employees" in any one accident; or

2. Caused by disease and sustained by a "residence employee".

HO 24 92 04 02

© ISO Properties, Inc.,  2001

Page 1 of 2

Our total limit of liability shall not exceed $500,000 for all damages arising out of "bodily injury" by disease regardless of the number of "residence employees" who sustain "bodily injury" by disease.

**OTHER INSURANCE**

If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

**CONFORMITY TO STATUTE**

Terms of this insurance which are in conflict with the New Jersey Workers' Compensation Law are amended to conform to that law.

**EXCLUSIONS**

This insurance does not apply:

1. To liability for "bodily injury" arising out of "business" pursuits of the "insured";

2. Under Coverage II:

   a. To liability assumed by the "insured" under any contract or agreement;

   b. To "bodily injury" by disease unless a written claim is made or suit brought against the "insured" within 36 months after the end of the policy period.

   c. To any obligation under a workers' compensation, unemployment or disability benefits law or any similar law.

   d. To punitive or exemplary damage because of "bodily injury" to any employee employed in violation of law or to any employee employed in violation of law with the knowledge or consent of the "insured".

This endorsement is based on New Jersey Compensation Rating and Inspection Bureau Endorsement WC 29 03 02 A.

Page 2 of 2                © ISO Properties, Inc., 2001                HO 24 92 04 02

EXHIBIT B - 068

HOMEOWNERS
HO 34 02 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT

**DEFINITIONS**

Definition B.1. is replaced by the following:

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the:

      (1) Ownership of such vehicle or craft by an "insured";

      (2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      (3) Entrustment of such vehicle or craft by an "insured" to any person;

      (4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

      (5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      (1) Aircraft means any contrivance used or designed for flight including but not limited to unmanned aircraft, whether or not model or hobby;

      (2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

      (3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

      (4) Motor vehicle means a "motor vehicle" as defined in 7. below.

All other provisions of this Policy apply.

 © Insurance Services Office, Inc., 2016

EXHIBIT B - 069

<div align="right">

**HOMEOWNERS**
**HO 99 82 06 17**

</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# IDENTITY RECOVERY COVERAGE
### IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT COVERAGE

Throughout this Coverage Endorsement (hereinafter referred to as "IDR Coverage"), the word "insured" means any person or organization qualifying as such under the policy.

Other words and phrases that appear in "quotations" have special meaning. Refer to SECTION VI – DEFINITIONS of this endorsement.

The terms and conditions of the Cancellation Clause of the Common Policy conditions and any amendment to such terms incorporated by endorsement are hereby incorporated herein and shall apply to coverage as is afforded by this IDR Coverage, unless specifically stated otherwise in an endorsement(s) attached hereto.

### SECTION I – WHAT IS COVERED

**Identity Recovery Coverage**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1.  There has been an "identity theft" involving the personal identity of an "insured" under this policy; and

2.  Such "identity theft" is first discovered by the "insured" during the policy period for which this Identity Recovery Coverage is applicable; and

3.  Such "identity theft" is reported to us within 60 days after it is first discovered by the "insured".

If all three of the requirements listed above have been met, then we will provide the following to the "insured":

1.  **Case Management Service**

Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2.  **Expense Reimbursement**

Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

This coverage is additional insurance.

### SECTION II – EXCLUSIONS - WHAT IS NOT COVERED

The following additional exclusions apply to this coverage. These exclusions apply to both Case Management Service and Expense Reimbursement Coverage.

We do not cover loss or expense arising from any of the following:

1.  The theft of a professional or business identity.

2.  Any fraudulent, dishonest or criminal act by an "insured" or any person aiding or abetting an "insured" or by any authorized representative of an "insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3.  An "identity theft" that is not reported in writing to the police.

### SECTION III – LIMIT OF LIABILITY

HOMEOWNERS -- Identity Recovery Coverage

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement Coverage.

Expense Reimbursement Coverage is subject to an Identity Recovery Limit of $25,000 annual aggregate per "insured". Regardless of the number of claims, the Identity Recovery Limit is the most we will pay for the total of all loss or expense arising out of all "identity theft" to any one "insured" which are first discovered by the "insured" during the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate Identity Recovery Limit applicable to the policy period when the "identity theft" was first discovered.

Legal costs as provided under Paragraph d. of the definition of "identity recovery expenses" of this endorsement in SECTION VI -- DEFINITIONS are part of, and not in addition to, the Expense Reimbursement Coverage limit.

Paragraph e. (Lost Wages) and Paragraph f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to a sublimit of $5,000. This sublimit is part of, and not in addition to, the Expense Reimbursement Coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "insured".

Paragraph g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement Coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "insured".

Paragraph h. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement Coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "insured".

SECTION IV -- DEDUCTIBLE

IDR Coverage is not subject to a deductible.

SECTION V -- CONDITIONS

The following additional conditions apply to this coverage:

A. Assistance and Claims

For assistance, the "insured" should call the Identity Recovery Help Line at 1-844-378-3178.

The Identity Recovery Help Line can provide the "insured" with:

1. Information and advice for how to respond to a possible "identity theft"; and

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses".

B. Services

The following conditions apply as respects any services provided by us or our designees to any "insured" under this endorsement:

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "insured".

HOMEOWNERS – Identity Recovery Coverage

2. All services may not be available or applicable to all individuals. For example, "insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts".

All other provisions of this policy apply.

SECTION VI – DEFINITIONS

1. "Identity Recovery Case Manager" means one or more individuals assigned by us to assist an "insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "insured". This includes, with the permission and cooperation of the "insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. "Identity Recovery Expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

   c. Costs for credit reports from established credit bureaus.

   d. Fees and expenses for an attorney approved by us for the following:

      (1) The defense of any civil suit brought against an "insured";

      (2) The removal of any civil judgment wrongfully entered against an "insured";

      (3) Legal assistance for an "insured" at an audit or hearing by a governmental agency;

      (4) Legal assistance in challenging the accuracy of the "insured's" consumer credit report; or

      (5) The defense of any criminal charges brought against an "insured" arising from the actions of a third party using the personal identity of the "insured".

   e. Actual lost wages of the "insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependents of the "insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "insured".

   g. Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "insured".

   h. Any other reasonable costs necessarily incurred by an "insured" as a direct result of the "identity theft".

      (1) Such costs include:

         (A) Costs by the "insured" to recover control over his or her personal identity.

EXHIBIT B - 072

HOMEOWNERS – Identity Recovery Coverage

                     (B) Deductibles or service fees from financial institutions.

             (2) Such costs do not include:

                     (A) Costs to avoid, prevent or detect "identity theft" or other loss.

                     (B) Money lost or stolen.

                     (C) Costs that are restricted or excluded elsewhere in this endorsement or policy.

3. "Identity Theft" means the fraudulent use of the social security number or other method of identifying an "insured". This includes the fraudulent use of the personal identity of an "insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

   "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**HOMEOWNERS
HO 99 83 08 17**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PROTECTIVE DEVICES

**A. DEFINITIONS**

1. The following definition is added:

   "Protective Devices" are devices listed on your declaration pages that include fire alarms, burglar alarms, sprinkler systems and water sensors.

2. It is a condition of coverage under **SECTION I - PROPERTY COVERAGES** of your policy that you:

   a. Maintain all Protective Devices in complete working order and,

   b. If the Protective Devices listed in your declarations include a Central Station Reporting Fire Alarm or a Central Station Reporting Burglar Alarm, that you maintain the connection between the device and a central station. And,

   c. Notify us if you know of any suspension of, removal of, change in, or impairment in any Protective Device listed in the declarations.

**B.** The following is added to **SECTION I – EXCLUSIONS:**

If the Protective Devices listed in the Declarations include a Central Station Reporting Fire Alarm or an automatic sprinkler system, we will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you failed to comply with any condition set forth in Paragraph A. DEFINITIONS of this endorsement.

If Protective Devices listed in the declarations include a Central Station Reporting Burglar Alarm or local burglar alarm  We will not pay for loss or damage caused by or resulting from theft if, prior to the theft, you failed to comply with any condition set forth in Paragraph A.

HO 99 83 08 17      Includes copyrighted material of the Insurance Services Office, Inc., used with its permission.      Page 1 of 1

EXHIBIT B - 074

HOMEOWNERS
HO 99 89 06 17

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# SERVICE LINE COVERAGE

It is agreed the following additional coverage is added to Section I of the Homeowners 2 – Broad Form, Homeowners 3 – Special Form or Homeowners 5 – Comprehensive Form, whichever is applicable:

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Homeowners policy.  The most we will pay for loss, damage or expense under this endorsement arising from any "one service line failure" is $10,000.  Coverage provided under this endorsement does not increase any limit of liability under Section I.

## DEFINITIONS

The following definitions are added:

1.  "Covered service line"

    a.  "Covered service line" means exterior underground piping and wiring, including permanent connections, valves or attached devices providing one of the following services to your "residence premises":

        (1) Communications, including cable transmission, data transmission, internet access and telecommunications;

        (2) Compressed air;

        (3) Drainage;

        (4) Electrical power;

        (5) Heating, including geothermal, natural gas, propane and steam;

        (6) Waste disposal; or

        (7) Water.

    b.  A "covered service line" must be owned by you or you must be responsible for its repair or replacement as required by law, regulation or service agreement.

        Should repair or replacement be your responsibility, a "covered service line" ends at the precise location where your responsibility for such repair or replacement ends. However, in no event will a "covered service line" extend beyond the point of connection to the main service or utility line.

    c.  "Covered service line" does not include:

        (1) That part of piping or wiring that runs through or under a body of water, including but not limited to a swimming pool, pond or lake;

        (2) That part of piping or wiring that runs through or under the dwelling or other structure; or

        (3) Piping or wiring that is not connected and ready for use.

2.  "Earth movement" means:

    a.  Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

    b.  Landslide, mudslide or mudflow;

    c.  Subsidence or sinkhole collapse;

    d.  Tsunami or volcanic action; or

    e.  Any other naturally occurring earth movement including earth sinking, rising or shifting.

EXHIBIT B – 075

HOMEOWNERS – Service Line Coverage

3.  "One service line failure" means: if an initial "service line failure" causes other "service line failures," all will be considered "one service line failure." All "service line failures" that are the result of the same event will be considered "one service line failure."

4.  "Service line failure" means a leak, break, tear, rupture, collapse or arcing of a "covered service line" not otherwise excluded by this endorsement. A "service line failure" may be caused by, but is not limited to, the following perils:

    a.  Wear and tear, marring, deterioration or hidden decay;

    b.  Rust or other corrosion;

    c.  Mechanical breakdown, latent defect or inherent vice;

    d.  Weight of vehicles, equipment, animals or people;

    e.  Vermin, insects, rodents or other animals;

    f.  Artificially generated electrical current;

    g.  Freezing or frost heave;

    h.  External force from a shovel, backhoe or other form of excavation; or

    i.  Tree or other root invasion.

    "Service line failure" does not include blockage or low pressure of a "covered service line" when there is no physical damage to the "covered service line."

SECTION I – PROPERTY COVERAGES

The following coverages are added, subject to the limit provided under the Agreement section of this endorsement:

1.  Damages to "Covered Service Line"

We will pay for physical loss or damage to your "covered service line" that is the direct result of a "service line failure."

2.  Excavation Costs

With respect to your "covered service line" that is damaged as the result of a "service line failure," we will pay the necessary and reasonable excavation costs that are required to repair or replace the damaged "covered service line."

3.  Expediting Expenses

With respect to your "covered service line" that is damaged as the result of a "service line failure," we will pay the reasonable extra cost to:

    a.  Make temporary repairs; and

    b.  Expedite permanent repairs or permanent replacement.

4.  Loss of Use

Coverage for Additional Living Expense and Fair Rental Value, as described under Coverage D – Loss of Use, is extended to the coverage provided by this endorsement.

5.  Outdoor Property

We will pay for your outdoor property, including but not limited to trees, shrubs, plants, lawns, walkways and driveways, that is damaged as a result of a "service line failure" or that is damaged during the excavation of your "covered service line" following a "service line failure."

SECTION I - EXCLUSIONS

The following exclusions are added:

1.  We will not pay for loss or damage to:

    a.  Septic systems, including leach fields, septic tanks, pumps, motors or piping that runs from the septic tank to the

HO 00 00 06 17                                                        Page 2 of 4

leach fields, other than loss or damage
to covered waste disposal piping
running from your dwelling or other
structure to a septic tank;

b. Water wells, including well pumps or
motors;

c. Heating and cooling systems, including
heat pumps; or

d. Sprinkler system pumps, motors or
heads.

2. We will not pay for loss or damage to a
"covered service line" that is damaged while
it is being installed, dismantled or repaired.
However, this exclusion shall not apply if a
covered "service line failure" necessitated
such installation, dismantling or repair.

3. We will not pay to clean up or remove
pollutants, hazardous waste or sewage.

4. We will not pay under this endorsement for
loss or damage caused by or resulting from
any of the following causes of loss:

a. Fire; or water or other means used to
extinguish a fire;

b. Explosion;

c. Lightning; windstorm or hail; smoke;
aircraft; riot or civil commotion; theft;
breakage of glass;

d. Flood, surface water, waves, tides, tidal
waves, overflow of any body of water, or
their spray, all whether driven by wind or
not; or water that backs up or overflows
from a sewer, drain or sump; or

e. "Earth movement," except for "earth
movement" that results from the ground
thawing after a freeze.

5. We will not pay additional costs incurred for
loss or increased usage of water, natural
gas, propane or any other service caused by
or resulting from a "service line failure."

**DEDUCTIBLE**

We will pay only that part of the loss that
exceeds $500. No other deductible applies to
this coverage.

**SECTION I - CONDITIONS**

The following conditions are added:

1. **Environmental, Safety and Efficiency
Improvements**

If a "covered service line" requires
replacement due to a "service line failure,"
we will pay your additional cost to replace
with materials that are better for the
environment, safer for people or more
energy or water efficient than the materials
being replaced.

However, we will not pay to increase the
size or capacity of the materials and we will
not pay more than 150% of what the cost
would have been to replace with like kind
and quality. This condition does not
increase the limit that applies to this
endorsement.

2. **Loss Settlement**

Losses under this endorsement will be
settled as follows:

a. Our payment for damaged covered
property will be the smallest of:

(1) The limit of liability that applies to
this endorsement;

(2) The cost to repair the damaged
property;

(3) The cost to replace the damaged
property on the same premises; or

(4) The necessary amount actually
spent to repair or replace the
damaged property.

EXHIBIT B – 077

**HOMEOWNERS – Service Line Coverage**

    b.   Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

    c.   You are responsible for the extra cost to alter or relocate "covered service lines," unless such alteration or relocation is required by law or ordinance.

EXHIBIT B – 078

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# HOME SYSTEMS PROTECTION

It is agreed the following additional coverage is added to SECTION I of your Homeowners 2 – Broad Form, Homeowners 3 – Special Form or Homeowners 5 – Comprehensive Form, whichever is applicable:

We will provide the insurance described in this endorsement in compliance with all applicable provisions (including but not limited to Conditions, Definitions and Exclusions) of your Homeowners policy. The most we will pay for loss, damage or expense under this endorsement arising from any "one home system breakdown" is $50,000. Coverage provided under this endorsement does not increase any limit of liability under SECTION I.

## DEFINITIONS

The following definitions are added:

1.  "Covered home equipment"

    a.  "Covered home equipment" means property covered under Coverage A – Dwelling, Coverage B – Other Structures or Coverage C – Personal Property:

        (1) That generates, transmits or utilizes energy; or

        (2) Which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

        "Covered home equipment" may utilize conventional design and technology or new or newly commercialized design and technology.

    b.  None of the following is "covered home equipment":

        (1) Supporting structure, cabinet or compartment;

        (2) Insulating material associated with "covered home equipment";

        (3) Water piping other than boiler feedwater piping, boiler condensate return piping or water piping connected to a heating or air conditioning system;

        (4) Wastewater piping or piping forming a part of a fire protective sprinkler or irrigation system;

        (5) Buried or encased piping or buried vessels, however, interior buried or encased piping connected to a heating or air conditioning system is "covered home equipment";

        (6) Software or electronic data;

        (7) Drones or any equipment mounted on a drone; or

        (8) Riding lawn mowers or tractors.

2.  "Electronic circuitry" means microelectronic components, including but not limited to circuit boards, integrated circuits, computer chips and disk drives.

3.  "Electronic circuitry impairment" means an accidental event involving "electronic circuitry" within "covered home equipment" that causes "covered home equipment" to suddenly lose its ability to function as it had been functioning immediately before such event. An "electronic circuitry impairment" must also meet each of the following conditions:

    a.  We shall determine that the reasonable and appropriate remedy to restore such "covered home equipment's" ability to function is the replacement of one or more "electronic circuitry" components of the "covered home equipment."

EXHIBIT B – 079

HOMEOWNERS – Home Systems Protection

b. The "covered home equipment" must be owned or used by you, or members of your family who reside with you.

c. None of the following is an "electronic circuitry impairment":

(1) Any condition that can be reasonably remedied by:

(a) Normal maintenance, including but not limited to replacing expendable parts, recharging batteries or cleaning;

(b) Rebooting, reloading or updating software or firmware; or

(c) Providing necessary power or supply.

(2) Any condition caused by or relating to:

(a) Incompatibility of the "covered home equipment" with any software or equipment installed, introduced or networked within the prior 30 days; or

(b) Insufficient size, capability or capacity of the "covered home equipment."

(3) Exposure to adverse environmental conditions, including but not limited to change in temperature or humidity, unless such conditions result in an observable loss of functionality. Loss of warranty shall not be considered an observable loss of functionality.

4. "Equipment breakdown"

a. "Equipment breakdown" means a sudden and accidental:

(1) Mechanical breakdown;

(2) Electrical breakdown; or

(3) Bursting, cracking or splitting of "covered home equipment" that results in direct physical damage and requires repair or replacement of all or part of the damaged "covered home equipment."

b. None of the following is an "equipment breakdown":

(1) Rust, corrosion, erosion, deterioration or gradual loss of efficiency or functionality of "covered home equipment";

(2) Leakage or seepage at or from any connection, valve, fitting, shaft or seal;

(3) Any programming error, programming limitation, computer virus, malicious code, loss of data, loss of access, loss of use, loss of functionality or other condition within or involving data or media of any kind;

(4) Complete or partial interruption of electrical power, fuel or water supply, whether deliberate or accidental;

(5) Any condition which can be corrected by resetting, recalibrating or by the performance of maintenance; or

(6) Cosmetic or other damage that does not impair functionality.

5. "Home system breakdown" means an "equipment breakdown" or "electronic circuitry impairment."

6. "One home system breakdown" means: if an initial "home system breakdown" causes other "home system breakdowns," all will be considered "one home system breakdown." All "home system breakdowns" that are the result of the same event will be considered "one home system breakdown."

SECTION I – PROPERTY COVERAGE

EXHIBIT B – 080

**HOMEOWNERS – Home Systems Protection**

The following coverages are added, subject to the limit provided under the Agreement section of this endorsement unless otherwise specified below:

1. **Damage to "Covered Home Equipment"**

   We will pay for direct physical damage to "covered home equipment" that is the result of a "home system breakdown" that occurs on or off the "residence premises." We will consider "electronic circuitry impairment" to be physical damage to "covered home equipment."

2. **Spoilage**

   With respect to your refrigerated property, we will pay:

   a. For physical damage due to spoilage that is the result of a "home system breakdown";

   b. Any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

   We will pay up to $500 under this Spoilage coverage for any "one home system breakdown."

3. **Loss of Use**

   Coverage for Additional Living Expense and Fair Rental Value, as defined under Coverage D – Loss of Use, is extended to the coverage provided by this endorsement.

4. **Expediting Expenses**

   With respect to your "covered home equipment" that is damaged as the result of a "home system breakdown," we will pay the reasonable extra cost to:

   a. Make temporary repairs; and

   b. Expedite permanent repairs or permanent replacement.

**SECTION I - EXCLUSIONS**

Any exclusions in your policy for mechanical breakdown and electrical breakdown do not apply to this endorsement.

The following exclusions are added.

1. We will not pay for loss, damage or expense caused by or resulting from:

   a. Electrical power surge or brown out, whether or not caused by lightning. However, with respect to Coverage C, when Sudden and Accidental Damage from Artificially Generated Electrical Current is a Peril Insured Against in your policy, we will pay for loss, damage or expense to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus, caused by or resulting from artificially generated electrical current.

   b. Any of the following, whether the excluded peril occurs on or off the "residence premises":

      (1) Fire (including fire resulting from a "home system breakdown"); or water or other means used to extinguish a fire;

      (2) Explosion;

      (3) Lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; breakage of glass; falling objects; weight of snow, ice or sleet; freezing (caused by cold weather); collapse;

      (4) Vandalism, malicious mischief or theft;

      (5) Flood, surface water, waves, tides, tidal waves, overflow of any body of

EXHIBIT B – 081

water, or their spray, all whether driven by wind or not; mudslide or mudflow; or water that backs up or overflows from a sewer, drain or sump, and any other water damage including water damage resulting from a "home system breakdown"; or

(6) Any earth movement including but not limited to earthquake, subsidence, sinkhole collapse, landslide, earth sinking, tsunami or volcanic action.

c.   Liquids of any type.

2.   We will not pay for any property that is not "covered home equipment" except for refrigerated property to the extent it is covered under Spoilage.

**DEDUCTIBLE**

We will pay only that part of the loss that exceeds $500. No other deductible applies to this coverage.

**SECTION I - CONDITIONS**

The following conditions are added:

1.   **Environmental, Safety and Efficiency Improvements**

If "covered home equipment" requires replacement due to a "home system breakdown," we will pay your additional cost to replace with equipment that is better for the environment, safer for people, or more energy or water efficient than the equipment being replaced.

However, we will not pay to increase the size or capacity of the equipment and we will not pay more than 150% of what the cost would have been to replace with like kind and quality. This condition does not apply to the replacement of component parts or to any property to which actual cash value applies and does not increase any of the applicable limits.

2.   **Loss Settlement**

Losses under this endorsement will be settled as follows:

a.   Our payment for damaged covered property will be the smallest of:

(1) The applicable limit of liability;

(2) The cost to repair the damaged property;

(3) The cost to replace the damaged property with like kind, quality and capacity on the same "residence premises"; or

(4) The necessary amount actually spent to repair or replace the damaged property.

b.   Except as described in Environmental, Safety and Efficiency Improvements above, you are responsible for the extra cost of replacing damaged property with property of a better kind or quality or of a different size or capacity.

c.   If you do not repair or replace the damaged property within 24 months after the date of the "home system breakdown," then we will pay only the smaller of:

(1) The cost it would have taken to repair or replace at the time of the "home system breakdown"; or

(2) The actual cash value at the time of the "home system breakdown."

EXHIBIT B – 082

## A Summary of Your Rights Under the Fair Credit Reporting Act

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. For more information, including information about additional rights, go to www.consumerfinance.gov/learnmore or write to: Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

• **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

• **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

  • a person has taken adverse action against you because of information in your credit report;
  • you are the victim of identity theft and place a fraud alert in your file;
  • your file contains inaccurate information as a result of fraud;
  • you are on public assistance;
  • you are unemployed but expect to apply for employment within 60 days.

In addition, all consumers are entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.consumerfinance.gov/learnmore for additional information.

• **You have the right to ask for a credit score.** Credit scores are numerical summaries of your creditworthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

• **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.consumerfinance.gov/learnmore for an explanation of dispute procedures.

• **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer reporting agency may continue to report information it has verified as accurate.

• **Consumer reporting agencies may not report outdated negative information.** In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

• **Access to your file is limited.** A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business. The FCRA specifies those with a valid need for access.

• **You must give your consent for reports to be provided to employers.** A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer. Written consent generally is not required in the trucking industry. For more information, go to www.consumerfinance.gov/learnmore.

• **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.** Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on. You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

• **You may seek damages from violators.** If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

• **Identity theft victims and active duty military personnel have additional rights.** For more information, visit www.consumerfinance.gov/learnmore.

States may enforce the FCRA, and many states have their own consumer reporting laws. In some cases, you may have more rights under state law. For more information, contact your state or local consumer protection agency or your state Attorney General. For information about your federal rights, contact:

| TYPE OF BUSINESS: | CONTACT: |
|---|---|
| 1.a. Banks, savings associations, and credit unions with total assets of over $10 billion and their affiliates.<br>b. Such affiliates that are not banks, savings associations, or credit unions also should list, in addition to the CFPB: | a. Consumer Financial Protection Bureau<br>1700 G Street NW<br>Washington, DC 20552<br>b. Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC 20580<br>(877) 382-4357 |
| 2. To the extent not included in item 1 above:<br>a. National banks, federal savings associations, and federal branches and federal agencies of foreign banks<br>b. State member banks, branches and agencies of foreign banks (other than federal branches, federal agencies, and insured State Branches of Foreign Banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act<br>c. Nonmember Insured Banks, Insured State Branches of Foreign Banks, and insured state savings associations<br>d. Federal Credit Unions | a. Office of the Comptroller of the Currency<br>Customer Assistance Group<br>1301 McKinney Street, Suite 3450<br>Houston, TX 77010-9050<br>b. Federal Reserve Consumer Help Center<br>P.O. Box 1200<br>Minneapolis, MN 55480<br>c. FDIC Consumer Response Center<br>1100 Walnut Street, Box #11<br>Kansas City, MO 64106<br>d. National Credit Union Administration<br>Office of Consumer Protection (OCP)<br>Division of Consumer Compliance and Outreach (DCCO)<br>1775 Duke Street<br>Alexandria, VA 22314 |
| 3. Air carriers | Asst. General Counsel for Aviation Enforcement & Proceedings<br>Aviation Consumer Protection Division<br>Department of Transportation<br>1200 New Jersey Avenue, S.E.<br>Washington, DC 20590 |
| 4. Creditors Subject to Surface Transportation Board | Office of Proceedings, Surface Transportation Board<br>Department of Transportation<br>395 E Street SW<br>Washington, DC 20423 |
| 5. Creditors Subject to Packers and Stockyards Act | Nearest Packers and Stockyards Administration area supervisor |
| 6. Small Business Investment Companies | Associate Deputy Administrator for Capital Access<br>United States Small Business Administration<br>409 Third Street, SW, 8th Floor<br>Washington, DC 20416 |
| 7. Brokers and Dealers | Securities and Exchange Commission<br>100 F Street NE<br>Washington, DC 20549 |
| 8. Federal Land Banks, Federal Land Bank Associations, Federal Intermediate Credit Banks, and Production Credit Associations | Farm Credit Administration<br>1501 Farm Credit Drive<br>McLean, VA 22102-5090 |
| 9. Retailers, Finance Companies, and All Other Creditors Not Listed Above | FTC Regional Office for region in which the creditor operates or<br>Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC 20580<br>(877) 382-4357 |

**THIS ENDORSEMENT AUTHORIZES THE POLICY.**

# AUTHORIZATION AND ATTESTATION

This endorsement authorizes the insurance contract between you and the GUARD insurance company subsidiary listed on the DECLARATIONS PAGE of your insurance policy.

In Witness Whereof, this page executes and fully attests to this policy. If required by state law, the policy shall not be valid unless countersigned by our authorized representatives.

Authorizing signatures

Matthew O'Connor
General Counsel and Secretary

Sy Foguel, ACAS, FILAA
Chief Executive Officer and President

EXHIBIT B - 087

# EXHIBIT C

**James Osborn**

| | |
|---|---|
| **From:** | Linda West <LWest@narisk.com> |
| **Sent:** | Friday, July 23, 2021 3:09 PM |
| **To:** | Sandra Colleran |
| **Cc:** | Richard Schaefer; jessica.szafranovicz@GUARD.COM; Sarah Stoss; James Osborn |
| **Subject:** | FW: [EXTERNAL]fuggi claim ghag21060829 |

**Linda West Sr. Claims Adjuster**
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



**From:** Linda West
**Sent:** Friday, July 23, 2021 3:02 PM
**To:** Sandra Colleran <Sandra.Colleran@guard.com>
**Cc:** Jessica.Szafranovicz@GUARD.com; Jimosborn@osborninsuranceagency.com; Sarah Stoss <Sarah.Stoss@guard.com>
**Subject:** RE: [EXTERNAL]fuggi claim ghag2106

Sandra,

The claim was set-up at NARS on 6-28-21 and insured was finally reached on 7-1-21.  Theft reported and contents form was sent to insured on 7-01-21 to his email address and advised to send document along with receipts, photos, manuals and other supporting documents to mailroom@narisk.com

Agent Jim Osborn called on 7-12-21 – gave status update and he advised he would be assisting insured on the claim.  Emailed contents form to agent's email.

Spoke to Agent again on 7-22-21 who advised he did not receive the contents form.  Resent form again to the agent and insured.

Sincerely,

Linda West

**From:** Sandra Colleran <Sandra.Colleran@guard.com>
**Sent:** Friday, July 23, 2021 11:12 AM
**To:** Linda West <LWest@narisk.com>
**Cc:** Richard Schaefer <rschaefer@narisk.com>; Mail Room <mailroom@narisk.com>; Sarah Stoss

1

<Sarah.Stoss@guard.com>
Subject: FW: [EXTERNAL]fuggi claim ghag2106

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Please review, contact needs to be made as advised below.
As well I do not see that an ROR went out on this and we are into a month.

Thanks.

**Sandra Colleran**
PROGRAM OVERSIGHT ADJUSTER
Berkshire Hathaway GUARD Insurance Companies
Sandra.Colleran@guard.com
570-825-9900, ext.4678

**From:** Jessica Szafranovicz <Jessica.Szafranovicz@GUARD.com>
**Sent:** Friday, July 23, 2021 8:37 AM
**To:** Sandra Colleran <Sandra.Colleran@guard.com>
**Subject:** RE: [EXTERNAL]fuggi claim ghag2106

Hi Sandra,

The claim number in our system is ROHO193965-001-001-001.



**Jessica Szafranovicz**
SENIOR PRODUCER RELATIONS ADVISOR
Berkshire Hathaway GUARD Insurance Companies
Jessica.Szafranovicz@GUARD.com
570-825-9900, ext.4021

**From:** Sandra Colleran <Sandra.Colleran@guard.com>
**Sent:** Friday, July 23, 2021 8:02 AM
**To:** Jessica Szafranovicz <Jessica.Szafranovicz@GUARD.com>
**Subject:** RE: [EXTERNAL]fuggi claim ghag2106

Hi Jessica,
This is not a claim number and I am not able to pull anything up in accordance with that number directly. Can you provide more information. Policy, name address etc.
Thanks

2

**Sandra Colleran**
PROGRAM OVERSIGHT ADJUSTER
Berkshire Hathaway GUARD Insurance Companies
Sandra.Colleran@guard.com
570-825-9900, ext.4678

**From:** Jessica Szafranovicz <Jessica.Szafranovicz@GUARD.com>
**Sent:** Thursday, July 22, 2021 3:11 PM
**To:** Sandra Colleran <Sandra.Colleran@guard.com>
**Subject:** FW: [EXTERNAL]fuggi claim ghag2106

Hi Sandra,

Would you be able to assist on ROHO193965-001-001-001? Agent and insured are unable to get in contact with NARS.

Thanks,



**Jessica Szafranovicz**
SENIOR PRODUCER RELATIONS ADVISOR
Berkshire Hathaway GUARD Insurance Companies
Jessica.Szafranovicz@GUARD.com
570-825-9900, ext.4021

**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Thursday, July 22, 2021 3:05 PM
**To:** Jessica Szafranovicz <Jessica.Szafranovicz@GUARD.com>
**Subject:** [EXTERNAL]fuggi claim ghag2106

**CAUTION: This email originated from outside of BH Insurance.**

Hi Jessica,

I'm sorry to bother you with this again but I still haven't heard back from anyone regarding the above claim. I left a message for the person you gave me the other day but haven't heard back. Also haven't back from the adjuster Linda West. The insured is very upset that nothing is being done. Can you please help me out here

**James Osborn**

**Osborn Insurance Agency**
1868 Rt 88
Brick, NJ 08724

OIA: 848-232-3490 ext 101
Fax 848-232-1569

3

www.osborninsuranceagency.com



**FARMERS**



**Call or email me to receive a FREE, no obligation quote that could potentially save you money!!**
**Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies**
**Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies**

The information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

****** CONFIDENTIALITY NOTICE ******

THIS E-MAIL, INCLUDING ANY ATTACHED FILES, MAY CONTAIN CONFIDENTIAL, PROPRIETARY AND/OR PRIVILEGED INFORMATION FOR THE SOLE USE OF THE INTENDED RECIPIENT(S). ANY REVIEW, USE, DISTRIBUTION, COPY OR DISCLOSURE BY OTHERS IS STRICTLY PROHIBITED. IF YOU ARE NOT THE INTENDED RECIPIENT (OR AUTHORIZED TO RECEIVE INFORMATION FOR THE RECIPIENT), PLEASE CONTACT THE SENDER AND DELETE ALL COPIES OF THIS MESSAGE.

THANK YOU

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided. All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery. NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us. This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

# EXHIBIT D

**James Osborn**

| | |
|---|---|
| **From:** | Linda West <LWest@narisk.com> |
| **Sent:** | Tuesday, July 27, 2021 4:18 PM |
| **To:** | James Osborn |
| **Cc:** | robefug@gmail.com |
| **Subject:** | RE: Bicycle Contents receipts |
| **Attachments:** | Dates of Emails Sent.PNG |

Mr. Osborn,

I find your attacks on my claim handling unprofessional and unnecessary.  We are both here to assist the insured in every way possible.
I have attached the dates the documents were sent thru my computer and the email sent on 7/22/21 thru my outlook account - three times to the insured and two times to yourself.  I hope we can move forward to get the claim addressed amicably.

Due to our caseload, it is difficult to reach us because I am on the phone all day, but we all do our best to communicate as quickly as possible.

See below email sent thru Outlook:
------------------------------------------------------------------------------------------------------------

Linda West Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



On Thu, Jul 22, 2021 at 3:18 PM Linda West <LWest@narisk.com> wrote:

Mr. Osborn,

 Attached is the inventory form  sent on 7-12-21 to your attention and 7-1-21 to the insured that you advised today has been received.   Please ask the insured to complete the form along with providing receipts of purchase, manuals, and/or photos to show ownership of the items.

 Please provide a copy of the theft report if you have received or provide the report # so I can order the report.  Thank you for your assistance.

 Best Regards,

 *Linda C. West*

1

**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Tuesday, July 27, 2021 3:43 PM
**To:** Linda West <LWest@narisk.com>
**Cc:** Robe Fug <robefug@gmail.com>
**Subject:** RE: Bicycle Contents receipts

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Linda,                                                                              .

Please do not insult my intelligence. You did not send a form to me until last week. I had been trying to reach you for well over a week and never heard back from you until I made the complaint with Guard. That is when I received the only contents form that was sent. What I find interesting is in your email to Sandra Colleran at Guard on 7/23 at 3:03 pm you indicate that you sent me two forms(not three) one on 7/12(never received) and then one on 7/22, which I did receive. Out of curiosity, when was this phantom third form sent? I also spoke to Mr. Fuggi, and he had not received a form until last week. I think it is safe to assume that forms were not sent to either of us until 7/22. Please send me the email receipt showing you sent this form out three times to me and twice to Mr. Fuggi. Your email is laughable.

With that being said, I will speak to Mr. Fuggi regarding the form. In the future, it would be appreciated if you respond to my phone and email inquiries in a timely manner so that we can get this claim paid.

**James Osborn**

**Osborn Insurance Agency**
1868 Rt 88
Brick, NJ 08724

OIA: 848-232-3490 ext 101
Fax 848-232-1569
*www.osborninsuranceagency.com*





Call or email me to receive a FREE, no obligation quote that could potentially save you money!!
Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies
Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies

The information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby

notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

**From:** Linda West <LWest@narisk.com>
**Sent:** Tuesday, July 27, 2021 3:20 PM
**To:** Robe Fug <robefug@gmail.com>; James Osborn <jimosborn@osborninsuranceagency.com>
**Subject:** RE: Bicycle Contents receipts

Dear Mr. Osborn,

I am in receipt of your email and receipts.  As previously requested, I have emailed the contents form to the insured on two occasions and to yourself on three occasions.
I have advised you and the insured, that the requirements for handling the theft claim is to have the contents form completed, dated, and signed by the insured.

I am sorry to learn the insured is upset per your report to GUARD but I have to follow the requirements to handle the claim.  Unfortunately not receiving proper documents as requested is only a delay to the claim process.  I am again asking for the contents form to be completed, signed and returned by the insured to move forward in a expeditiously manner to conclude the file handling.

Best Regards,

Linda C. West

Linda C. West
Senior Claims Adjuster

North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
Direct #: (678) 666-1273
Office#: (800) 315-6090  Ext. 1273
Fax: (866) 261-8507
mailroom@narisk.com

Linda West Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



-----Original Message-----
**From:** Robe Fug <robefug@gmail.com>
**Sent:** Tuesday, July 27, 2021 1:23 PM
**To:** jimosborn@osborninsuranceagency.com; Linda West <LWest@narisk.com>
**Subject:** Bicycle Contents receipts

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided. All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery. NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us. This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

# EXHIBIT E

## James Osborn

| | |
|---|---|
| **From:** | Linda West <LWest@narisk.com> |
| **Sent:** | Wednesday, August 11, 2021 4:29 PM |
| **To:** | James Osborn |
| **Cc:** | Robe Fug |
| **Subject:** | FW: FUGGI          GHAG21060829 |

**Linda West Sr. Claims Adjuster**
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



**From:** Linda West
**Sent:** Wednesday, August 11, 2021 4:25 PM
**To:** James Osborn <jimosborn@osborninsuranceagency.com>

**Subject:** RE: FUGGI GHAG21060829

The worksheet on the contents list has been completed and I will be completing a report for approval to issue the payment for $40,508.88.  Will advise once I have the approval to issue payment.

Best Regards,

Linda West
Sr. Claims Adjuster

**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Tuesday, August 10, 2021 5:28 PM
**To:** Linda West <LWest@narisk.com>
**Subject:** RE: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Hi Linda,

Was checking in for updates on the Fuggi claim.

1

Please advise

**James Osborn**

**Osborn Insurance Agency**
1868 Rt 88
Brick, NJ 08724.

OIA: 848-232-3490 ext 101
Fax 848-232-1569
*www.osborninsuranceagency.com*




**Call or email me to receive a FREE, no obligation quote that could potentially save you money!!**
**Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies**
**Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies**

The Information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

**From:** Linda West <LWest@narisk.com>
**Sent:** Monday, August 2, 2021 3:45 PM
**To:** James Osborn <jjmosborn@osborninsuranceagency.com>
**Cc:** Robe Fug <robefug@gmail.com>
**Subject:** RE: FUGGI GHAG21060829

Received.

Linda West

**Linda West Sr. Claims Adjuster**
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



-----Original Message-----

2

From: James Osborn <jimosborn@osborninsuranceagency.com>
Sent: Monday, August 2, 2021 11:14 AM
To: Linda West <LWest@narisk.com>
Subject: FW: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Good morning Linda,
Attached is the signed form.  I also included an apple watch that we didn't include in the initial submission.

Please let me know if anything else is needed.
Thank you
Jim

James Osborn

Osborn Insurance Agency
1868 Rt 88
Brick, NJ 08724

OIA: 848-232-3490 ext 101
Fax 848-232-1569
https://nam10.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.osborninsuranceagency.com%2F&amp;data=04%7C01%7CLWest%40narisk.com%7Ca71e47780e3c45c010ab08d955c82521%7C45327fb2b74487e9d6c66b3ed2dc988%7C0%7C0%7C637635140712767256%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLiAwMDAiLCJQIjoiV2luMzIiLCJBTiI6Ik1haWwiLCJXVCI6Mn0%3D%7C1000&amp;sdata=ZUHt%2F8OEnhNPcResFpCBgfHS%2B3DLk7K1FSnFXIp8t4c%3D&amp;reserved=0

Call or email me to receive a FREE, no obligation quote that could potentially save you money!! Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies

The information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

——Original Message——
From: James Osborn <jimosborn@osborninsuranceagency.com>
Sent: Monday, August 2, 2021 10:19 AM
To: James Osborn <jimosborn@osborninsuranceagency.com>
Subject:

TASKalfa 3253ci
[00:17:c8:ab:d8:5e]

3

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses. NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis of information provided. All claims e-mails are retained and subject to review by clients, federal and state regulatory authorities, and legal discovery. NARS internal security may unintentionally prevent your e-mail from reaching its destination. If you do not receive a timely response to your email, please call us. This email is intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged, confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and return the original message at the listed email address.

# EXHIBIT F

**James Osborn**

| | |
|---|---|
| **From:** | Linda West <LWest@narisk.com> |
| **Sent:** | Friday, August 20, 2021 8:35 AM |
| **To:** | James Osborn |
| **Cc:** | Richard Schaefer; robefug@gmail.com |
| **Subject:** | GHAG21060829        Insured: Robert Fuggi |

Mr. Osborn,

I have tolerated your insults and unprofessional comments while handling the investigation of this claim – it now ends. I am not here to educate you on the claim process nor do I need you to tell me how to do my job.

I will no longer work with you on this claim nor answer any other emails from you.

I will work directly with the insured to conclude this matter.

I initially asked the insured for the police report or police report #. We require the stolen items to be a part of the report – end of conversation, The claim will not be pending until I get the information requested.

Finally, if you wish to be a claims adjuster, please apply for the position , otherwise, I do not intend to allow you to think I am here to answer to you regarding the investigation of this claim any longer.

Best Regards,

*Linda C. West*

Linda C. West
Senior Claims Adjuster



North American Risk Services, Inc.
P.O. Box 166002
Altamonte Springs, FL 32716-6002
Direct #: (678) 666-1273
Office#: (800) 315-6090  Ext. 1273
Fax: (866) 261-8507
mailroom@narisk.com

1

Linda West Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Thursday, August 19, 2021 9:32 PM
**To:** Linda West <LWest@narisk.com>
**Subject:** Re: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Linda.    We understand you are saying it is required.    We are asking why.    Where is it stated that this is required.    Please answer the question we have asked.      "Required, please provide" (your answer) is not an acceptable answer and is quite unprofessional,  but we have grown accustomed to that treatment from you.  Please explain to us how it is required.    I believe you have wasted enough of mr Fuggi's time.      Give us the reasoning behind your request and explain to us why it is required or cut mr fuggi his check.   He has waited long
 enough.      That being said,  the department investigating this theft will not include any contents list on the report due to the fact that there is an ongoing  investigation.   Would you like the investigators information so you can make  these demands of him?
It would be greatly appreciated if you could cut through this nonsense and issue Mr. Fuggi the money that is obviously due to him.
Sent from my iPhone

> On Aug 19, 2021, at 8:03 PM, Linda West <LWest@narisk.com> wrote:
>
>
> Required, please provide.
>
>
>
> Linda West Sr. Claims Adjuster
> P.O. Box 166002 Altamonte Springs, FL 32716-6002
> O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507
>
> <rezisedtransparentlogo_438cd81d-722b-4e93-8546-b89722af6258.png>
>
> **From:** James Osborn <jimosborn@osborninsuranceagency.com>
> **Sent:** Thursday, August 19, 2021 3:25 PM

2

**To:** Linda West <LWest@narisk.com>
**Subject:** RE: FW: FUGGI GHAG21060829

**This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.**

Hi Linda,

Would you be able to explain to us why this is necessary?

Thanks
Jim

**James Osborn**

**Osborn Insurance Agency**
1868 Rt 88
Brick, NJ 08724

OIA: 848-232-3490 ext 101
Fax 848-232-1569
*www.osborninsuranceagency.com*
<image001.png>

<image002.jpg>

**Call or email me to receive a FREE, no obligation quote that could potentially save you money!!**
**Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies**
**Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies**

The information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof). Please destroy any printed copies as well. Thank you.

**From:** Linda West <LWest@narisk.com>
**Sent:** Monday, August 16, 2021 12:09 PM
**To:** Robe Fug <robefug@gmail.com>
**Cc:** James Osborn <jimosborn@osborninsuranceagency.com>
**Subject:** RE: FW: FUGGI GHAG21060829

Mr. Fuggi,

Please provide the report # for the police report. Have all items on content's list been provided to the police to place on the report? If not please do so.

If you have a copy of the police report, please provide.

Best Regards,

**Linda West** Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507

<image003.png>

**Linda West** Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507

<image003.png>

**From:** Robe Fug <robefug@gmail.com>
**Sent:** Wednesday, August 11, 2021 4:41 PM
**To:** Linda West <LWest@narisk.com>
**Cc:** JIM@OSBORNINSURANCEAGENCY.COM
**Subject:** Re: FW: FUGGI GHAG21060829

**This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.**

Thank you , Linda .
Rob Fuggi

On Wed, Aug 11, 2021 at 4:29 PM Linda West <LWest@narisk.com> wrote:

**Linda West** Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507

<image003.png>

**From:** Linda.West
**Sent:** Wednesday, August 11, 2021 4:25 PM

4

**To:** James Osborn <jimosborn@osborninsuranceagency.com>

**Subject:** RE: FUGGI GHAG21060829

The worksheet on the contents list has been completed and I will be completing a report for approval to issue the payment for $40,508.88.  Will advise once I have the approval to issue payment.

Best Regards,

Linda West

Sr. Claims Adjuster

**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Tuesday, August 10, 2021 5:28 PM
**To:** Linda West <LWest@narisk.com>
**Subject:** RE: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

HI Linda,

Was checking in for updates on the Fuggi claim.

Please advise

**James Osborn**

**Osborn Insurance Agency**

1868 Rt 88

Brick, NJ 08724

OIA: 848-232-3490 ext 101

Fax 848-232-1569

*www.osborninsuranceagency.com*

<image001.png>

<image002.jpg>

**Call or email me to receive a FREE, no obligation quote that could potentially save you money!!**

**Personal, Auto, Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies**

**Business Auto, Building, Flood, Life, Professional, Liability or Business Umbrella Policies**

The information contained in this message and attachments, if any, is confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please delete all electronic copies of this message and attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

**From:** Linda West <LWest@narisk.com>
**Sent:** Monday, August 2, 2021 3:45 PM
**To:** James Osborn <jimosborn@osborninsuranceagency.com>
**Cc:** Robe Fug <robefug@gmail.com>
**Subject:** RE: FUGGI GHAG21060829

6

Received.

Linda West

**Linda West Sr. Claims Adjuster**
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507

<Image003.png>

——Original Message——
From: James Osborn <jlmosborn@osborninsuranceagency.com>
Sent: Monday, August 2, 2021 11:14 AM
To: Linda West <LWest@narisk.com>
Subject: FW: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless
you recognize the sender, and know the content is safe.

Good morning Linda,
Attached is the signed form.  I also included an apple watch that we didn't include in the initial submission.

Please let me know if anything else is needed.
Thank you
Jim

James Osborn

Osborn Insurance Agency
1868 Rt 88
Brick, NJ 08724

OIA: 848-232-3490 ext 101
Fax 848-232-1569
https://nam10.safelinks.protection.outlook.com/?url=http%3A%2F%2Fwww.osborninsuranceagency.com%2F&a
mp;data=04%7C01%7CLWest%40narisk.com%7Ca71e47780e3c45c010ab08d955c82521%7C45327fb2b874487e9
d6c66b3ed2dc988%7C0%7C0%7C637635140712767256%7CUnknown%7CTWFpbGZsb3d8eyJWIjoiMC4wLjAwMD
AiLCJQIjoiV2luMzIiLCJBTiI6lk1haWwiLCJXVCI6Mn0%3D%7C1000&amp;sdata=ZUHt%2F8OEnhNPcResFpCBgfHS%2
B3DLk7K1F$nFXip8t4c%3D&amp;reserved=0

Call or email me to receive a FREE, no obligation quote that could potentially save you money!! Personal, Auto,
Homeowners, Renters, Flood, Life, Motorcycle, Boat or Personal Umbrella Policies Business Auto, Building, Flood,
Life, Professional, Liability or Business Umbrella Policies

The information contained in this message and attachments, if any, is confidential information intended only for
the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you
are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If
you have received this communication in error, please delete all electronic copies of this message and

7

attachments, if any (without retaining a copy thereof).  Please destroy any printed copies as well.  Thank you.

-----Original Message-----
From: James Osborn <jimosborn@osborninsuranceagency.com>
Sent: Monday, August 2, 2021 10:19 AM
To: James Osborn <jimosborn@osborninsuranceagency.com>
Subject:

_____

TASKalfa 3253ci
[00:17:c8:ab:d8:5e]
_____

Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses.
NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis
of information provided. All claims e-mails are retained and subject to review by clients, federal and state
regulatory authorities, and legal discovery. NARS internal security may unintentionally prevent your e-mail from
reaching its destination. If you do not receive a timely response to your email, please call us. This email is
intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged,
confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination
or copying is strictly prohibited. If you have received this communication in error, please immediately notify us
and return the original message at the listed email address.

# EXHIBIT G

Print | Close Window

**Subject:** Fwd: [EXTERNAL]fuggi claim ghag2106
**From:** Robe Fug <robefug@gmail.com>
**Date:** Wed, Nov 10, 2021 10:33 am
**To:** Fuggi Law Firm <fuggistaff@fuggilaw.com>
**Attach:** Image004.png

———— Forwarded message ————
**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Date:** Wed, Aug 25, 2021 at 2:16 PM
**Subject:** RE: [EXTERNAL]fuggi claim ghag2106
**To:** Linda West <LWest@narisk.com>, Sandra Colleran <Sandra.Colleran@guard.com>
**CC:** :Jessica.Szafranovicz@GUARD.com <Jessica.Szafranovicz@guard.com>, Sarah Stoss <Sarah.Stoss@guard.com>, Robe Fug <robefug@gmail.com>

HI, I am tryng to follow up on this claim. Ms. West had indicated in an email on 8/11(yellow below) that the worksheet was completed and she was completeing a report for approval of payment in the amount of 40,508.00. Please see email below. On 8/16, Ms. West then asked for a police report. This was after we sent her the list of contents and after she indicated she would be approving the payment. This was not mentioned on the 11th in Ms. West's email. Mr. Fuggi indicated in an email to Ms. West on 8/19, that he contacted the investigators office and was told that they would not add a contents list to the report since the theft investigation was ongoing. I also contacted Ms. West that same day and simply asked if she could explain why this was needed(no mention of this prior). I am including my email,(in green) and as you can see this was not confrontational what so ever, but just a request for information. As you can see below, the answer we received was not an explanation, the answer was Required, please provide. Not exactly an explanation. I am simply trying to get answers from Ms. West regarding the claim and why the clam is taking so long to process. In our last correspondence, Ms. West advised that she will no longer give me any information on this claim and that she would deal with Mr. Fuggi directly. That was Friday, and as of this morning I don't believe Ms. West had contacted Mr. Fuggi. Again, I am only trying to get this situation rectified for Mr, Fuggi. We have received contradicting messages from Ms. West and there was a period of time when I could not reach her via phone. Being that Ms. West will no longer provide information to me, the agent on this account, we are requestiong that someone else please take a look this claim and expedite payment to Mr. Fuggi. Should you have any questions, please contact me at 848-232-3490.

Thank you

Jim Osborn

Required, please provide.

**Linda West** Sr. Claims Adjuster.f
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



**From:** James Osborn <jimosborn@osborninsuranceagency.com>
**Sent:** Thursday, August 19, 2021 3:25 PM
**To:** Linda West <LWest@narisk.com>

**Subject:** RE: FW: FUGGI GHAG21060829

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Hi Linda,

Would you be able to explain to us why this is necessary?

Thanks

Jim

**From:** Linda West
**Sent:** Wednesday, August 11, 2021 4:25 PM
**To:** James Osborn <jimosborn@osborninsuranceagency.com>

**Subject:** RE: FUGGI GHAG21060829

The worksheet on the contents list has been completed and I will be completing a report for approval to issue the payment for $40,508.88. Will advise once I have the approval to issue payment.

Best Regards,

Linda West

Sr. Claims

Case 3:22-cv-04356   Document 1   Filed 06/30/22   Page 137 of 149 PageID: 137

Copyright © 2003-2022. All rights reserved.

# EXHIBIT H

**Print** | **Close Window**

   **Subject:** Fwd: FW: 19-00886345 Fuggi Law Firm

     **From:** Robe Fug <robefug@gmail.com>

     **Date:** Wed, Nov 10, 2021 10:33 am

       **To:** Fuggi Law Firm <fuggistaff@fuggilaw.com>

   **Attach:** image001.png

           image002.png

           image003.png

           image004.png

---

--------- Forwarded message ---------

From: **James Osborn** <jmosborn@osborninsuranceagency.com>

Date: Tue, Sep 7, 2021 at 9:27 AM

Subject: FW: 19-00886345 Fuggi Law Firm

To: Robe Fug <robefug@gmail.com>

Good Morning

I wanted to advise I received the required documents from Wells Fargo and just issued payment for $46,420.17 to payoff the loan. Due to the loan being in the state of NJ, Robert would you be able to provide a notarized letter of affiliation attached with a business card confirming position so we can pass that off to our salvage vendor. I'll be able to issue the remaining balance of $32,980.26 once I received the letter of affiliation. We will need the original sent to us via mail as our vendor will need the original. I can move forward with payment once I get a digital copy.

*Derrick Duong*

**Auto Adjuster**

The Hanover Insurance Group |440 Lincoln Street | Worcester, MA 01653

☎ 800.628.0250 ext 8554143 | 📠 508.926.5660 | ✉ deduong@hanover.com

Office Hours: Monday-Friday 8:00-4:30 PM

I strive to provide outstanding customer service. Did I meet your expectations? Please feel free to provide any feedback to my manager Matt Cairns MCairns@Hanover.com





Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects that person

https://email18.godaddy.com/view_print_multi.php?uidArray=220|...

to criminal and civil penalties. In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties. In New York, the civil penalty is not to exceed five thousand dollars ($5,000) and the stated value of the claim for each such violation.

Copyright © 2003-2022. All rights reserved.

# EXHIBIT I

Print | Close Window

Subject: **Fwd: GHAG21060829 Insured: Robert Fuggi Examination under Oath (EUO)**
   From: **Robe Fug <robefug@gmail.com>**
   Date: **Wed, Nov 10, 2021 10:19 am**
     To: **Fuggi Law Firm <fuggistaff@fuggilaw.com>**
 Attach: image002.png
           rezisedtransparentlogo_438cd81d-722b-4e93-8546-b89722af6258.png
           image001.png

――――― Forwarded message ―――――
From: **Linda West <**L.West@narisk.com**>**
Date: Wed, Oct 6, 2021 at 12:50 PM
Subject: RE: GHAG21060829 Insured: Robert Fuggi Examination under Oath (EUO)
To: Robe Fug <robefug@gmail.com>
CC: Richard Schaefer <rschaefer@narisk.com>

Dear Mr. Fuggi,

We do not provide copies of our working claim file.  I can say that all questions will be addressed as to the claim and facts presented by yourself.

The parameters of the EUO are based on the facts of the claim reported, documents submitted, the police report and any other statements that may be introduced during the conversation.  We do not prepare you for the EUO prior to the agreed date with the attorney because you are the most knowledgeable person of the facts and information submitted relating to the claim.

Best Regards,

*Linda C. West*

 Linda C. West

Senior Claims Adjuster



North American Risk Services, Inc.

P.O. Box 166002

Altamonte Springs, FL 32716-6002

**Linda West** Sr. Claims Adjuster
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



**From:** Robe Fug <robefug@gmail.com>
**Sent:** Monday, October 4, 2021 9:02 PM
**To:** Linda West <LWest@narisk.com>
**Subject:** Re: GHAG21060829 Insured: Robert Fuggi Examination under Oath (EUO)

This Message originated outside of North American Risk Services. Do not click links or open attachments unless you recognize the sender, and know the content is safe.

Ms. West

As the insured please forward to me a copy of the information that you will be providing to the attorney handling the statement under oath . We request this in order to properly prepare for the statement under oath .

This information would be afforded to us in discovery pursuant to court rules , through notices to produce and written interrogatory questions .

I would also like the parameters of the statement to be clear and agreed to before hand so there is no confusion since this is not a deposition .

This will enable the parties to properly prepare to illicit relevant information as to the pending content claim .

Thank you ,

Rob Fuggi

On Mon, Oct 4, 2021 at 6:49 PM Linda West <LWest@narisk.com> wrote:

Dear Mr. Fuggi,

Below is the information regarding the Attorney who will conduct the EUO with you.  He will be in contact to schedule the date/time once he obtains all file information to conduct the procedure.

If you have further questions, please contact me at my information below.

Jeremiah L. O'Leary, Esq.

Finazzo Cossolini O'Leary

Meola & Hager, LLC

Main: 973-343-4960

Best Regards,

*Linda C. West*

Linda C. West

Senior Claims Adjuster



North American Risk Services, Inc.

P.O. Box 166002

Altamonte Springs, FL 32716-6002

Direct #: (678) 666-1273

Office#: (800) 315-6090  Ext. 1273

Fax: (866) 261-8507

mailroom@narisk.com

**Linda West Sr. Claims Adjuster**
P.O. Box 166002 Altamonte Springs, FL 32716-6002
O: (678) 666-1273 | (800)-315-6090 Ext. 1273 | F: (866) 261-8507



Emails cannot be guaranteed to be error-free, as information can be corrupted, lost, delayed, or contain viruses.
NARS accepts no liability for the content of any e-mail, or for the consequences of any actions taken on the basis
of information provided. All claims e-mails are retained and subject to review by clients, federal and state
regulatory authorities, and legal discovery. NARS internal security may unintentionally prevent your e-mail from
reaching its destination. If you do not receive a timely response to your email, please call us. This email is
intended solely for the use of the individual to whom it is addressed. It may contain information that is privileged,
confidential or exempt from disclosure. If the reader of the email is not the intended recipient, any dissemination
or copying is strictly prohibited. If you have received this communication in error, please immediately notify us and
return the original message at the listed email address.

Copyright © 2003-2022. All rights reserved.

# EXHIBIT J



**Via Regular Mail**

November 4, 2021

Robert Fuggi
199 Lake Ave.
Island Heights, NJ 08732-7791

> Re:   Insured: Robert Fuggi
> Claim no.: GHAG21060829
> Policy no.: ROHO193965
> Date of Loss: 06/25/2021
> Loss Location: 199 Lake Ave., Island Heights, NJ 08732-7791

Dear Mr. Fuggi:

North American Risk Services, Inc. is the third-party claims administrator acting on behalf of AmGUARD Insurance.  Based upon the investigation to date by North American Risk Services, Inc., there is a question as to whether any coverage is afforded to you under the AmGUARD Policy referenced.  At this time, we are reviewing the information that has been submitted and continuing to investigate the facts of the loss.

Please review your policy conditions, pages 13-14 of 23, which state in part:

**SECTION I – CONDITIONS**
...
**C.  Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us.  These duties must be performed either by you, an "insured" seeking coverage, or a representative to either:

1. Give prompt notice to us or our agent
2. Notify the police in case of loss by theft
3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money** under Section I – Property Coverages;
4. Protect the property from further damage.  If repairs to the property are required, you must:
   a. Make reasonable and necessary repairs to protect the property; and
   b. Keep an accurate record of repair expenses;
5. Cooperate with us in the investigation of a claim;
6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss.  Attach all bills receipts and related documents that justify the figures in the inventory;

---

Robert Fuggi
November 4, 2021
Page 2 of 4

7. As often as we reasonably require:
   a. Show the damaged property;
   b. Provide us with records and documents we request and permit us to make copies; and
   c. Submit to examination under oath, while not in the presence of another "insured" and sign the same.
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
   a. The time and cause of loss;
   b. The interests of all "insureds" and all others in the property involved and all liens on the property;
   c. Other insurance which may cover the loss;
   d. Changes in title or occupancy of the property during the terms of the policy;
   e. Specifications of damaged building and detailed estimates;
   f. The inventory of damaged personal property described in 6. above;
   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
   h. Evidence or affidavit that supports a claim under E.6. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery And Counterfeit Money under Section I –Property Coverages, stating the amount and cause of loss.

As you know, we are in the process of completing our investigation of the Claim. In connection with that investigation, you have provided some of the necessary information referenced above. To the extent that you have any additional information for the Claim, we request that you provide it as soon as possible.

We refer you to the Property Loss Conditions of the Policy, which requires that you "submit to examination under oath", among the unambiguous "duties after loss" cited herein. Pursuant to the above provisions, AmGUARD hereby elects to exercise its right under the Policy to conduct your Examination Under Oath in connection with the Claim. The examination will be conducted at 10 AM on Friday, November 19, 2021 by Alexander Carmichael of the law firm of Finazzo, Cossolini, O'Leary, Meola & Hager, LLC of Morristown, New Jersey, who has been designated by the undersigned for that purpose. Mr. Carmichael may be contacted at (973) 343 4978. The examination shall be conducted via Zoom video conferencing, which will be arranged with you by the aforementioned law firm. If the date or time is inconvenient for you, please advise or have your attorney advise the undersigned and we will attempt to accommodate your schedule. As noted above, to the extent there is any additional documentation you wish to provide in support of the Claim, please provide such documentation as soon as possible and in advance of the examination under oath.

AmGUARD is continuing its investigation and evaluation of this matter under a full reservation of rights. Neither this letter, nor its continued investigation, is intended to waive any rights or defenses which are now, or may hereafter, become available to AmGUARD. Anything done, or to be done by AmGUARD in connection with this matter, including the conducting of the Examination Under Oath by the law firm of Finazzo, Cossolini, O'Leary, Meola & Hager, LLC, shall not waive, invalidate, forfeit or modify any of the terms, conditions, limitations or

Robert Fuggi
November 4, 2021
Page 3 of 4

exclusions of the Policy, or any of AmGUARD's rights and defenses under the Policy, at law or otherwise. Rather, all such rights and defenses are expressly reserved, including the right to make additional requests for documents necessary and material to AmGUARD's claim investigation.

Very truly yours,

LW

Linda West
Senior Claims Adjuster
(800) 315-6090 x1273

cc:         Jeremiah L. O'Leary, Esq. (via email)
            Alexander Carmichael, Esq. (via email)

Robert Fuggi
November 4, 2021
Page 4 of 4