**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT R. FUGGI, JR.,<br><br>  Plaintiff,<br><br>v.<br><br>LINDA C. WEST *et al.*,<br><br>  Defendants. | Civil Action No. 22-4356 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Linda C. West ("West"), North American Risk Services, Inc. ("NARS"), and AmGuard Insurance Company's ("AmGuard") (collectively, "Defendants") Motion for Judgment on the Pleadings. (ECF No. 10.) Plaintiff Robert R. Fuggi, Jr. ("Plaintiff") opposed (ECF No. 12), and Defendants replied (ECF No. 13). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument under Local Civil Rule 78.1. For the reasons outlined below, Defendants' motion is granted.

**I.    BACKGROUND**[1]

**A.    Factual Background**

On June 25, 2021, at approximately 3:00 a.m., Plaintiff's 2018 F-150 Raptor Supercrew HWD was purportedly stolen from his driveway in Island Heights, New Jersey. (Compl. ¶¶ 10, 17,

---

[1] In considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

ECF No. 1.) According to Plaintiff, the truck was originally worth $84,760, "heavily modified with extensive upgrades designed to enhance its off-roading capabilities," and contained "significant amounts of personal property, mostly related to sporting and cycling, valued in excess of $40,000." (*Id.* ¶¶ 12-16.) The same day the truck was purportedly stolen, a police officer with the Island Heights Police Department filed a report confirming that the truck traveled through an E-Z pass stop in New Jersey; however, neither the truck nor the individuals responsible for the alleged theft were ever located. (*Id.* ¶¶ 20-22.)

Following the theft, Plaintiff filed a claim for the loss of the truck through his auto insurance. (*Id.* ¶ 23.) As for the personal property inside the truck, however, Plaintiff alleges that AmGuard insured that property under a homeowner's insurance policy issued to him (the "Policy"). (*Id.* ¶ 24.) According to Plaintiff, the Policy limit is $560,000 for personal property, and while it contains "special limits of liability for certain classes of personal property," athletic equipment, eyewear, and clothing without fur trim are not subject to those limits. (*Id.* ¶¶ 27-28.)

On June 25, 2021, Plaintiff reported the theft of the personal property to James Osborn, Plaintiff's insurance agent for the Policy, and Mr. Osborn forwarded Plaintiff's claim to AmGuard. (*Id.* ¶¶ 29-30.) AmGuard allegedly sent Plaintiff's claim to NARS for claim processing and investigation. (*Id.* ¶ 31.) According to Plaintiff, however, although Defendants "knew that Plaintiff's personal property was insured for in excess of half a million dollars, based on information and belief, Defendants singled out Plaintiff's claim for intentional delay and bad faith denial based on their unfounded hunch that his claim for some forty thousand dollars was excessive." (*Id.* ¶ 32.) In that regard, Plaintiff alleges that "[f]rom the start, communications with Defendant NARS through their agent Defendant West w[ere] marked by incompetence, delay and deception." (*Id.* ¶ 33.) For example, Plaintiff alleges that West required Plaintiff to submit

2

documents and take actions that were not required for processing his claim or were simply designed to deter him from pursuing his claim. (*Id.* ¶ 50.) According to Plaintiff, West required him to complete a sworn inventory of his stolen personal property and provide receipts and other documentation. (*Id.* ¶ 35.) Plaintiff also alleges that West required him to obtain an amended police report that included a completed inventory form with "the intention of leveraging Plaintiff using the threat of criminal liability for filing a false police report." (*Id.* ¶¶ 44, 49, 50-51.)

In addition to these documents, Plaintiff alleges that on October 4, 2021, West advised him that an Examination Under Oath ("EUO") was required to process his claim. (*Id.* ¶¶ 63-64.) West informed Plaintiff that a particular attorney would be conducting the EUO, and in response, Plaintiff requested a copy of all materials provided to EUO counsel. (*Id.* ¶¶ 64-65.) West advised Plaintiff that "NARS does not provide copies of working claim files to claimants." (*Id.* ¶ 66.)

One month later, on November 4, 2021, Defendants sent Plaintiff a letter advising that they were questioning whether the Policy covered Plaintiff's stolen personal property. (*Id.* ¶ 67.) Based on information and belief, Plaintiff alleges that the purpose of the EUO was only to harass and intimidate Plaintiff and to further delay the payment of his claim. (*Id.* ¶ 69.) Defendants scheduled the EUO for November 19, 2021; however, Plaintiff declined to appear. (*Id.* ¶¶ 70-71.) Based on Plaintiff's failure to appear, AmGuard denied his claim. (*Id.* ¶¶ 71-72.)

### B.   Procedural History

On June 30, 2022, Plaintiff filed his Complaint in this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), asserting that there is complete diversity between the parties and the amount in controversy exceeds the $75,000 threshold. (*Id.* ¶ 5.) The Complaint asserts five causes of action: (1) common law bad faith; (2) statutory fraud; (3) tortious interference with contract only as to West and NARS; (4) vicarious liability only as to AmGuard and NARS; and

(5) fictitious parties. (*See generally id.*) With respect to damages, the Complaint demands $121,526.64, which "represent[s] treble the lost insurance benefits" in the amount of $40,508.88. (*Id.* at 17.)

On December 9, 2022, Defendants filed the instant motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure[2] 12(c). Plaintiff filed opposition on January 3, 2023, and Defendants replied on January 30, 2023. The Motion is ripe for resolution.

## II.     LEGAL STANDARD

A defendant may move to dismiss a complaint for failure to state a claim before or after filing an answer. *See Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467, 484 (D.N.J. 2006) (citing Fed. R. Civ. P. 12(b)(6), (c)). When moving to dismiss after filing an answer, a defendant must move for judgment on the pleadings pursuant to Rule 12(c). *Id.* at 484; Fed. R. Civ. P. 12(c), (h)(2).

The standard governing a motion for judgment on the pleadings "'based on the defense that the plaintiff has failed to state a claim'" is the same standard "'that appl[ies] to a Rule 12(b)(6) motion.'" *See Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). A court must grant a Rule 12(c) motion "if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.'" *Zimmerman*, 873 F.3d at 417 (quoting *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)). The court will "accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Id.* at 417-18 (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)).

---

[2] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule" or "Rules."

4

Under Rule 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. *Id.* When evaluating a Rule 12(b)(6) motion, the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is plausible, a court conducts a three-part analysis. *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court identifies allegations that, "'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 680). This is a "context-specific task that requires the [] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

Defendants argue that the Complaint should be dismissed for several reasons, including Plaintiff's purported refusal to comply with the terms of the Policy and failure to assert an underlying breach of contract claim. (Defs.' Moving Br. 6-9.) At the outset, however, the Court considers Defendants' argument that Plaintiff's claim in Count Two, for violation of the NJCFA

5

against NARS and West, should be dismissed because the statute does not apply to claims based on an insurance company's refusal to provide benefits. (*Id.* at 9-11.) The Court agrees with Defendants' position.

In *Weiss v. First Unum Life Insurance Co.*, 482 F.3d 254 (3d Cir. 2007)—a case Plaintiff relies on in support of his position—the Third Circuit addressed allegations that First Unum Life Insurance Company ("First Unum") "discontinued payment of [the plaintiff's] disability benefits as part of First Unum's racketeering scheme involving an intentional and illegal policy of rejecting expensive payouts to disabled insureds." *Id.* at 256. The Third Circuit addressed whether these allegations violated the NJCFA, a question that had not been previously answered by the New Jersey Supreme Court. *See id.* at 266. The Third Circuit ultimately found that the NJCFA applied to the plaintiff's claims because the New Jersey Supreme Court's "statements regarding the application of the CFA to deter and punish deceptive insurance practices" made the Third Circuit "question why it would not conclude that the performance in the providing of benefits, not just sales, is covered, so that treble damages would be available for this claim under the CFA." *Id.*

Several courts following *Weiss*, however, have clarified that the NJCFA does not apply to claims based on an insurance company's refusal to provide benefits, like Plaintiff's claim here. *See, e.g., Granelli v. Chi. Title Ins.*, 569 F. App'x 125, 133 (3d Cir. 2014) ("New Jersey courts . . . have consistently held that the payment of insurance benefits is not subject to the Consumer Fraud Act." (quoting *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 168 (3d Cir. 1998))); *Zero Barnegat Bay, LLC v. Lexington Ins. Co.*, No. 14-1716, 2019 WL 1242436, at *4 (D.N.J. Mar. 18, 2019), *reconsideration denied*, No. 14-1716, 2019 WL 3818349 (D.N.J. Aug. 13, 2019) ("The CFA does not provide a remedy for failure to pay benefits" (citing *Nationwide Mut. Ins. Co. v. Caris*, 170 F. Supp. 3d 740, 746-47 (D.N.J. 2016))); *Breitman v. Nat'l Sur. Corp.*, No. 14-7843,

6

2015 WL 5723141, at *5 (D.N.J. Sept. 29, 2015) (same); *Fox v. State Farm Fire & Cas. Co.*, No. 22-18131, 2021 WL 4398740, at *9 (D.N.J. Sept. 24, 2021) ("Since [p]laintiff is seeking damages under the CFA arising from State Farm's denial of [p]laintiff's appraisal benefit [. . .], the CFA is not applicable."), *appeal dismissed sub nom. Fox v. State Farm Fire & Cas.*, No. 21-2918, 2021 WL 8087204 (3d Cir. Dec. 7, 2021).

Indeed, courts reviewing *Weiss* in the context of NJCFA claims have consistently held that *Weiss* does not stand for the proposition that a denial of benefits can establish a claim under the NJCFA. *See Smith v. State Farm Fire & Cas. Co.*, No. 19-10319, 2020 WL 6938432, at *8 (D.N.J. Nov. 25, 2020) (denying plaintiff's NJCFA claim that she was improperly denied coverage and finding plaintiff's reliance on *Weiss* misplaced because "*Weiss* dealt with 'the allegedly fraudulent practice of discontinuing previously authorized benefit payments,' as opposed to a case in which the plaintiff filed an insurance claim and 'was denied . . . benefits.'") (quoting *Alpizar-Fallas v. Favero*, 908 F.3d 910, 916-17 (3d Cir. 2018)); *see also Myska v. N.J. Mfrs. Ins.*, 440 N.J. Super. 458, 486 (App. Div. 2015) ("[T]he facts in *Weiss* are significantly distinguishable from those at hand. The court in *Weiss* found the CFA applied to allegations of fraudulent discontinuation of previously authorized benefits. The [*Weiss* court] did not discuss the precedent we have cited, which excludes determination of initial coverage disputes."). Since Plaintiff, here, is seeking damages under the NJCFA arising from AmGuard's denial of Plaintiff's personal property claim under his homeowner's policy, the NJCFA is not applicable. Thus, Count Two is dismissed.

That does not end the Court's inquiry, however. As signaled by the Magistrate Judge at the status conference held on November 15, 2022, in the event that Plaintiff's NJCFA claim is dismissed, the Court must determine whether Plaintiff still meets the threshold of $75,000 for diversity jurisdiction. It is well settled that the NJCFA entitles private plaintiffs to awards of treble

damages and attorney's fees. N.J. Stat. Ann. § 56:8-19. Under New Jersey law, a court must include these amounts when determining whether it has subject-matter jurisdiction in a diversity matter. *Suber v. Chrysler Corp.*, 104 F.3d 578, 585-87 (3d Cir. 1997). As Plaintiff does not have a colorable claim under the NJCFA, however, he is unable to avail himself of the statute's allowance of such damages award amplifiers to cross the minimum amount-in-controversy threshold. *See id.* at 587 (allowing a plaintiff to use the NJCFA's treble damages provision to influence the amount-in-controversy calculation only when he is not "precluded to a legal certainty from recovering under the NJCFA"). As a result, the Court finds that the only damages Plaintiff alleges are for purported lost insurance benefits, *i.e.*, $40,508.88. That sum is well below the $75,000 threshold for diversity jurisdiction.

Because the Court finds that it lacks subject-matter jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c); *Camden Cnty. Bd. of Chosen Freeholders v. Camden Cnty. Mun. Utils. Auth.*, No. 02-1734, 2002 WL 32063126, at *6 (D.N.J. June 5, 2002) ("[P]laintiff's lack of subject[-]matter jurisdiction is a threshold bar that precludes it from stating in its complaint a cognizable claim for relief under federal law. This Court acts within its discretion and declines to exercise supplemental jurisdiction over the remaining state claims. . . ."). The Complaint, accordingly, is dismissed for lack of subject-matter jurisdiction.[3]

---

[3] Because the Court finds that it lacks subject-matter jurisdiction, the Court does not consider Defendants' remaining arguments for dismissal of Plaintiff's claims.

### IV.     CONCLUSION

For the reasons set forth above, Defendants' motion for judgment on the pleadings is **GRANTED** in part. Specifically, the Court dismisses Plaintiff's claim for violation of the NJCFA (Count Two), because the NJCFA does not apply to claims based on an insurance company's refusal to provide benefits. Based on the dismissal of Count Two, the Court also finds that Plaintiff no longer meets the jurisdictional threshold of $75,000 to maintain diversity jurisdiction. As such, because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, it *sua sponte* dismisses the Complaint for lack of subject-matter jurisdiction.

*/s/ Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**